# Wytheville

## I. T. WILKINSON v. G. E. ALLEN.

### June 14, 1923.

1. ASSAULT AND BATTERY—*Action for Assault—Cross-Examination of Defendant as to Previous Difficulties—Case at Bar.*—In the instant case, in view of the testimony of defendant to the effect that immediately preceding the encounter, he said to the plaintiff, "I demand a public apology, or I am going to beat you," and that he slapped him two or three times, and in view of the fact that there was no assignment of error on the ground that the verdict of the jury was excessive, the action of the court in allowing the defendant to be interrogated on cross-examination concerning specific personal difficulties of his with parties other than the plaintiff, and in admitting in evidence the portions of the testimony of the defendant relating thereto, did not constitute harmful error.

2. ASSAULT AND BATTERY—*Self-Defense Invoked by Party Bringing on the Combat.*—One who without legal excuse brings on a combat cannot rely upon the claim of self-defense in justification of a blow struck by him during the encounter.

3. ASSAULT AND BATTERY—*Self-Defense—Self-Defense Invoked by Party Bringing on the Combat—Instruction not Supported by the Evidence—Case at Bar.*—In the instant case, an action for assault, according to the defendant's own testimony he brought on the combat and was without legal excuse therefor, as he had no right to make the threat which he stated that he made, to beat the plaintiff if he did not get a public apology from him.

   *Held:* That an instruction on the right of defendant to defend himself was erroneous, because without evidence to support it.

4. APPEAL AND ERROR—*Instructions—Harmless Error—Instruction Asked for by Appellant.*—Appellant cannot complain of an instruction asked for by him and more favorable to him than he was entitled.

5. ASSAULT AND BATTERY—*Self-Defense—Exceeding Right of Self-Defense—Harmless Error—Case at Bar.*—In the instant case, an action for assault, it appeared from defendant's own testimony that in slapping the plaintiff he exceeded his right of self-defense, as by his own statement he accomplished his purpose of self-defense by simply pushing the plaintiff away from the door of the room in which he supposed

plaintiff had a gun, and the jury were also warranted, from the comparative sizes of the parties, in believing that there was no necessity or apparent necessity for the slapping of the plaintiff by the defendant in self-defense.

*Held:* That if the court erred in the admission of testimony as to previous difficulties of defendant with others, still a verdict for the plaintiff could not be set aside, since under the evidence no other verdict than one for some damages could have been rendered, and there was no assignment of error challenging the verdict as excessive.

6. ASSAULT AND BATTERY—*Instructions—Instruction Postulating as a Matter of Law that Defendant Committed an Assault.*—In the instant case plaintiff in error assigned as error that an instruction given for defendant postulated, as a matter of law, that the defendant committed an assault upon the plaintiff, and that it disregarded the defendant's theory that his action in self-defense constituted justification.

*Held:* That a reading of the instruction showed that there was no merit in this assignment.

7. ASSAULT AND BATTERY—*Instructions—Instruction Disregarding the Evidence.*—In the instant case plaintiff in error assigned as error that an instruction given for defendant did not confine the jury to basing their holdings thereunder upon the evidence, but postulated its directions to the jury as matters of law authorizing them to find thereunder regardless of the evidence.

*Held:* That a reading of the instruction showed that there was no merit in this assignment.

8. INSTRUCTIONS—*Repetition.*—Where a point is covered by another instruction given by the court it is not error to refuse an instruction on the same point.

9. APPEAL AND ERROR—*Instructions—Over-Emphasis of a Point—Case at Bar.*—In the instant case defendant in an action for assault complained that as seven instructions were given for plaintiff, all of which dealt with recovery and measure of damages, and only one of which referred even incidentally to the chief and only ground of defense, namely, self-defense, the refusal of the court to give five instructions for defendant, embodying defendant's theory of self-defense, gave the jury a distorted and one-sided notion of the issues before them.

*Held:* That while the instructions given were open to the objection that they needlessly repeated the reference to damages, in view of the fact that, under the evidence, no other verdict than one for some amount of damages could have been properly found, and that there was no assignment of error challenging the amount of the verdict, the verdict could not be disturbed.

10. APPEAL AND ERROR—*Instructions—Self-Defense—Necessity.*—In an action for assault it is not error to refuse an instruction on the right of

self-defense which does not limit its application to such action of the
defendant as was necessary to repel the danger to himself as it reasonably appeared to him at the time.

11. ASSAULT AND BATTERY—*Evidence Sufficient to Support Verdict—Case at
Bar.*—In ·the instant case, an action for assault, defendant testified
that he went to the office of plaintiff to demand an apology from him,
and said to plaintiff: "I demand a public apology, or I am going to
beat you;" that plaintiff jumped up and started for the other room to
get a gun; that defendant pushed plaintiff from the door; that they
clinched, and that defendant slapped plaintiff several times.

   *Held:* That according to defendant's own testimony there was evidence sufficient to support a verdict for plaintiff.

12. APPEAL AND ERROR—*Costs of Printing Record—Time for Payment of
Costs.*—Acts 1922, p. 44, amending section 3486 of the Code of 1919,
changed the period within which the costs of printing were required
to be paid from six months to ninety days from the date of the notice
from the clerk.

   *Held:* That the amended statute was prospective, and not retrospective, in its operation; that it applies only to cases in which the appeal,
writ of error, or supersedeas was not granted (*i. e.,* cases in which the
petition and record had not reached the hands of the clerk of the court
after the appeal, writ of error, or supersedeas was allowed), and which
were not docketed, and the notice by the clerk had not been given,
until after it went into effect.

Error to a judgment of the Circuit Court of Lunenburg county, in a proceeding by motion for a judgment
for damages. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

This is an action by notice of motion, brought by the
defendant in error (hereinafter called plaintiff), against
the plaintiff in error (hereinafter called defendant),
seeking to recover $5,000.00 damages for personal
injury to the plaintiff, alleged to have been caused by a
certain assault and battery committed upon him by the
defendant.

There was a trial by jury which resulted in a verdict,
and judgment entered accordingly, for the sum of

20

$400.00 damages, in favor of the plaintiff, and the defendant assigns error.

The material facts are as follows:

During a political campaign, the defendant wrote an article signed "Lunenburg Voter," which was published in two local newspapers, in which he made certain statements concerning a certain mass meeting. The plaintiff wrote a reply to that article, signing his name thereto, which was also published, in which he stated that the statements made in the article first mentioned were "absolutely false." On reading this article the defendant drove to the town in which the plaintiff resides and went immediately to the office of the plaintiff, where he found the latter, about 8 o'clock at night. What thereupon occurred is stated as follows by the defendant in his testimony on the trial of this case:

"When I got to the office I found Mr. Weaver there, he and Mr. Allen were reading some papers. Mr. Allen asked me to come in and I told him I would wait outside until they got through, that I wanted to talk to George a minute; they said come in, but I waited outside until Mr. Weaver left. They opened the door and stood there talking a few minutes about some papers they had received from Mr. Gravatt about some legal matters and as soon as they finished Mr. Weaver left. Then George said, 'Isham, come in,' and I went in and he asked me to have a seat and I took a seat near the table and he sat on the edge of the table and said, 'Isham, what can I do for you?' And I said, 'George, did you write this piece in reply to the Lunenburg Voter?' He said, 'My name is signed to it, isn't it?' I said, 'George, do you mean to call me a liar?' He said, 'I do not know who wrote that piece,' and I said, 'I wrote it and I have come up here to get an apology.' I thought George was gentleman enough to apologize.

He said, 'I wrote that piece,' and from the manner in which he said it it seemed that he meant that if I wrote that article I was a liar. I said, 'George, I demand of you an apology, I demand a public apology or I am goint to beat you.' "

"Q. Then what happened?

"A. He jumped up and started in the other room to get his gun. He clinched me in the side and I pushed him inside and he began to holler, 'Help, murder,' before I touched him. I caught him by the arm and tried to reason with him, but he would not listen to reason and kept hollering, 'Help, murder, police,' *and I slapped him two or three times* and pushed him back in the room, and he fell across the table, and about that time the sergeant came up and said, 'What are you doing here? Consider yourself under arest,' and I said, 'All right,' and sat down. At that time Mr. Allen said: 'Yes; take him and put him in jail; if I could have gotten in the other room after my gun I would have blown his brains out.' Then the sergeant asked me if I had anybody to go on my bond and I said I could get somebody, and we went on down to the town hall and went before the mayor.

"Q. What was Mr. Allen's attitude when he started in the other room?

"A. It was very excited and belligerent.

"Q. What did you think he was going in the other room for?

"A. I thought he was going for a weapon of some kind. He said, 'You wait here a minute,' and I knew he was going in there for something and I knew the only thing I had asked him for was an apology and that he was not going in there to make an apology.

"Q. When you caught him by the arm what did he do?

"A. He caught me by the coat; I could not swear

that he hit me, if he did I did not feel any ill effects from it; he caught me by the coat and clinched me.

"Q.   Did you use any more force than was necessary to keep him from going through the door into the other room?

"A.   No, I merely *slapped him with my hand;* I did not hit him with my fist at all."   (Italics supplied.)

There was no evidence in the case from any source which weakened the effect of the admissions made by the defendant in this statement.

Further in his testimony, the defendant stated, in substance, that he had not formed any intention of assaulting the plaintiff prior to going to his office; that he and the plaintiff were friends; had never had any previous difficulty; that he confidently expected that, so soon as he disclosed that he wrote the article signed "Lunenburg Voter," the plaintiff would at once apologize; that he (the defendant) was surprised when the plaintiff refused to do so; and that he (the defendant), in the ensuing encounter with the planitiff, acted solely in self-defense and did nothing more than what was necessary to prevent the plaintiff from going in the other room and getting a pistol and using it to shoot the defendant if he could, as was the plaintiff's purpose, as reasonably appeared to the defendant from the conduct of the plaintiff at the time, and as was confirmed by the plaintiff's subsequent statement to the officer mentioned in the defendant's testimony.

On cross-examination the defendant was asked whether it was not a fact that he was "rather impulsive" and was "rather unfortunate in having had a great many personal encounters."   To which question the defendant replied: "No, sir; I think not; no more than the average man."   Whereupon this question was excepted to by counsel for defendant and the exception

overruled by the court. Thereupon, over the objection of the defendant by counsel, the defendant was asked whether he had had a personal difficulty with a man since the assault upon the plaintiff, to which he replied in the affirmative, naming the man, and added, in explanation, that the man named insulted the defendant's mother and called the defendant "a liar;" and he was asked whether he had not had three other personal difficulties, in which he had assaulted certain persons named, one of which difficulties he said never occurred, and two of which he admitted, adding, however, in explanation, that, in one of such cases the party accused him of misappropriating public funds, but that that matter had all been cleared up and that he hadn't a better friend at the time he was testifying than the party with whom he had that difficulty; and that, in the other of such cases, the assault occurred when witness and the other party were boys, when the latter was under the influence of liquor and said things he did not intend to say, and that that had been made up long ago and that they were "now" the best of friends.

The plaintiff introduced no evidence to rebut these explanations of the defendant.

The court gave the following instructions at the request of the plaintiff.

"A. The court instructs the jury that every person has a right to complete and perfect immunity from unlawful and hostile assaults, and that the purpose of the law is to establish such rules as shall constitute a complete protection against any violence whatever, whether perceptible injury results from it or not. Therefore, if from the evidence they believe that the defendant committed an unjustifiable and unlawful assault and battery upon the plaintiff, they must bring in a verdict for the plaintiff, whether he suffered any actual damage or not.

"B.    The court instructs the jury that if they believe from the evidence that the defendant's assault upon the plaintiff was of a grievous or wanton nature, manifesting a wilful disregard of the rights of the plaintiff, they may give exemplary damages, and in order to do this actual malice need not be shown.    Whenever unlawful acts are done wilfully, without any or on slight provocation, to the injury of another, the law presumes malice.

"C.    And the jury are further instructed by the court that in actions of this kind they are not confined to the actual pecuniary damages or loss in terms of money sustained by the plaintiff, but they may take into consideration the motive of the defendant, the insulting character of his assault, and all the circumstances of aggravation attending the act.    Such damages, if any such have been shown, are in their nature actual or compensatory as much as those given for bodily pain, suffering, loss of time and expenses incurred.

"D.    The court instructs the jury that damages recoverable in actions like this are of two kinds:    (1) Actual or compensatory damages, and (2) exemplary or punitive damages.    Actual or compensatory damages are the measures of the loss or injury sustained, and may embrace shame, mortification, humiliation, indignity to the feelings and the like, and need not be alleged in detail and require no proof.    Exemplary or punitive damages are something in addition to full compensation, not given as the plaintiff's due, but given rather with a view to the enormity of the offense to punish the defendant and thus make an example of him so that others may be deterred from committing similar offenses.    The law awards compensatory damages only where in the unlawful act there is no intent to do wrong, or where there is no malice, or where the offense is not

oppressively or recklessly committed, while exemplary or punitive damages are given where the wrongful act is done with a bad motive, or in a manner so wanton or reckless as to manifest a wilful disregard of the rights of others.    Therefore, if from the evidence the jury believe that the defendant committed an assault upon the plaintiff, and in so doing was actuated by malicious motives toward the said plaintiff, they may, in addition to the compensatory damages, award, as exemplary or punitive damages, such further sum as they may think right, in view of all the circumstances of the case; not exceeding $5,000.00, the amount claimed in the notice of motion; and that in order to entitle the plaintiff to such exemplary or punitive damages, actual malice need not be shown, if, from the evidence, they believe that the assault was committed under such circumstances as to show a wilful disregard of the rights of the plaintiff, for, in all such cases, the law infers malice.

"E.   The court instructs the jury, that every unlawful act done, wilfully, to the injury of another, upon slight provocation, is presumed by the law to be malicious.

"F.   The court instructs the jury that if they believe from the evidence that Wilkinson went to the office of Allen with the deliberate purpose of demanding an apology from Allen, for the article published in the Lunenburg Call, and on the refusal of Allen to make the apology, then and there assaulted him, as charged in the declaration, then said assault was without legal justification or excuse, and they should find for the plaintiff, and fix his damages in such sum as they may deem proper, not to exceed $5,000.00.

"G.   The court further instructs the jury that if they believe from the evidence that Wilkinson deliberately and wilfully assaulted Allen in his office, and that said

assault was without justification or excuse, they should find for the plaintiff, and in such case they may award the plaintiff, not only such damages as may compensate him for injuries, insult and humiliation sustained, but in addition such exemplary damages as will operate as a punishment to the defendant, and tend to deter him and others from similar outrages, so as not to exceed altogether the sum of $5,000.00."

And the following instructions were given at the request of the defendant, which we indicate by the letters "H" and "I."

"H.   The court instructs the jury that if they believe from the evidence that the defendant was actuated by no motive of malice or deliberate design to injure, but acted under the heat of blood and the impulse of the moment, with reasonable justification, and that the assault was not of a grievous or wanton nature, then the measure of damages is compensatory only and not vindictive, and the defendant is liable, if at all, only to such compensatory damages as may be shown.

"I.   The court instructs the jury that if they believe from the evidence the defendant went to the office of the plaintiff, on a peaceful mission, and for the purpose of peaceably talking, or having an interview, with the plaintiff, and to endeavor to get the plaintiff to retract or withdraw the objectionable portions of a newspaper article, published by the plaintiff in replying to a previous article published by the defendant, and that during said conversation or interview, the plaintiff did anything, which reasonably caused the defendant to believe that the plaintiff then and there intended to make an attack upon him, with a weapon, or with fists, the defendant had the right to do what seemed reasonably to be necessary to protect himself against such apparently threatened attacks, whether the same was real or not, provided he believed it was real, and for any

injury done the plaintiff, by the defendant, in using reasonable means to defend himself, the defendant is not liable, and if the jury believe that only such means were used and believe the other matters supposed in this instruction, they should find for the defendant."

The court refused the following instructions asked for by the defendant:

"No. 1.    The court instructs the jury that where a person is threatened with an attack and when, from the circumstances, he believes that there is a design to take life or to do him great bodily harm, then the assaulted party will be excusable or justifiable in using such force to prevent attack as may seem to be necessary, although it should afterwards appear that no injury was intended and no real danger existed.

"No. 2.    The court instructs the jury that if they believe from the evidence that the defendant, about six-thirty p. m., on the 22nd day of July, 1921, saw an article written by the plaintiff published in the Lunenburg Call in which the plaintiff stated that the defendant had told a falsehood, and that the defendant, in order to quietly settle the matter, drove from Kenbridge to Victoria, for the purpose of having a peaceful settlement and approached the plaintiff in his office in a courteous and friendly manner, and informed the plaintiff that he was the writer of an article appearing some time prior thereto, to which he had signed himself, 'A Lunenburg Voter,' and asked the plaintiff 'Did you intend to call me a liar?' to which the plaintiff replied in a very gruff manner 'My name is signed to it,' and that thereupon the defendant endeavored to reason with the plaintiff and the plaintiff grew more violent and excited and finally said in a very threatening manner, 'You stay here a minute,' and started into the next room for the purpose of obtaining a weapon, and that the defendant, in order to prevent the plaintiff from ob-

taining such a weapon, caught hold of the plaintiff and smacked him several times with his open hand, using only such force as was necessary, then the jury must find a verdict for the defendant.

"No. 3.    The court instructs the jury that if they believe from the evidence that the defendant was on the day in question in the office of the plaintiff in the town of Victoria, and that the defendant had sought the plaintiff for the purpose of settling in a friendly way a misstatement which had appeared in the Lunenburg papers, and that the plaintiff declined to discuss the matter or to make any explanation concerning the same, and that his manner and language became boisterous and excited towards the defendant, and that he jumped up and started to get a pistol, and that the defendant thought that he was about to be assaulted, then the defendant had a right to strike the plaintiff with his fist or hand before he was actually assaulted by the plaintiff, and the jury should find for the defendant unless they believe from the evidence that the defendant did more than was reasonably necessary for his own protection and safety.

"No. 4.    The court instructs the jury that if they believe from the evidence that Allen committed any act or that the circumstances brought about by him were of such a character as to afford the defendant, Wilkinson, reasonable ground for believing that Allen designed to assault him or to inflict on him great bodily harm, and that there was imminent danger of his carrying such design into execution, then the defendant was justified in making the assault, though it may turn out that appearances were deceptive and that there was no design on the part of Allen to assault the defendant or to do him great injury.

"No. 5.    The court instructs the jury that where a

man is threatened with danger the law authorizes him to determine from appearances and the actual state of things surrounding him as to the necessity of resorting to force, and if he acts from reasonable and honest convictions he will not be held responsible in damage for a mistake as to the actual danger where another judicious man would have been mistaken, for when one man attempts to assault another it gives the assaulted party the right to make use of such means to prevent injury as his behavior and the situation make necessary."

There is also before the court, on the appeal, a motion to dismiss the case, because of non-payment by the defendant of the costs of printing within the time it is alleged that such payment should have been made. This subject is dealt with in the opinion.

*Hudgins & Ozlin* and *N. S. Turnbull, Jr.*, for the plaintiff in error.

*Henry E. Lee* and *H. H. Watson*, for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The questions presented by the assignments of error will be disposed of in their order as stated below.

[1] 1. Did the action of the court, in allowing the defendant to be interrogated on cross-examination concerning specific personal difficulties of his, with parties other than the plaintiff, and in admitting in evidence the portions of the testimony of the defendant relating thereto, constitute harmful error?

In view of the testimony of the defendant himself,

stating the threat made by him to the plaintiff after he reached the office of and immediately preceding his encounter with the plaintiff, namely, "George, I demand of you an apology, I demand a public apology, or I am going to beat you," and stating also that he "slapped him two or three times   *   *   *   slapped him with my (his) hand   *   *"—and that there is no assignment of error on the ground that the verdict of the jury was excessive—the question must be answered in the negative.

[2-5] The case was tried upon the assumption that there was some evidence before the jury tending to support the theory that the defendant was entitled to rely upon his claim that he acted in self-defense, as appears from instruction "I," given at the request of the defendant. But one who, without legal excuse, brings on a combat, cannot rely upon the claim of self-defense, in any case of a personal encounter, in justification of a blow struck by him during the encounter. *Sims' Case,* 134 Va. 736, 115 S. E. 382, and authorities there cited, 115 S. E. 832. According to the defendant's own testimony he brought on the combat, and was without legal excuse therefor, as he had no legal right to make the threat which he states he made, which brought on the combat. And, granting that the testimony of the defendant was true, in which he stated that he had formed no intention of assaulting the plaintiff prior to going to his office, he formed this intention, according to his own testimony, after reaching the plaintiff's office, and expressed it to the plaintiff immediately preceding the combat, and the jury were plainly warranted by the evidence in finding that this threat, which the defendant had no legal right whatever to make, brought on the combat. Instruction "I" was therefore erroneous because without evidence to sup-

port it.   However, being asked for by the defendant and being more favorable to him than he was entitled to ask, he cannot complain of it.

Further:  Considering the case as tried under the law as stated in this instruction, it appears from the defendant's own testimony that in slapping the plaintiff he exceeded his right of self-defense.   By his own statement he accomplished the purpose of self-defense by simply pushing the plaintiff from the door back inside the room.   And the jury were amply warranted by other testimony in the record, showing the comparative sizes and physical prowess of the parties (which we need not refer to more in detail), that there was no necessity or apparent necessity whatever for the *slapping* of the plaintiff by the defendant in self-defense. Hence, if we consider that the court erred in allowing the interrogatories and in admitting the portions of testimony as to other difficulties had by the defendant with persons other than with the plaintiff, no other verdict in accordance with the evidence could have been returned by the jury than one for the plaintiff for some amount of damages, if but nominal damages; and, since there is no assignment of error challenging the verdict as excessive in amount, we must hold that the action of the court in question did not, in any aspect of it, constitute harmful error.

2.   Did the court err in giving the instructions which were given at the request of the plaintiff, and in refusing instructions Nos. 1, 2, 3, 4 and 5 asked for by the defendant?

The question must be answered in the negative.

The assignments of error complain only of instructions B and C given at the instance of the plaintiff.

[6, 7] The grounds of error assigned, as to instruction B, are 1st, that it postulates, as a matter of law,

that the defendant did commit an assault upon the plaintiff, and 2nd, that it disregards the defendant's theory that his action in self-defense constituted justification; and, as to instruction C, that it did not confine the jury to basing their holdings thereunder upon the evidence, but postulated its directions to the jury as matters of law, authorizing them to find thereunder, regardless of the evidence. It is manifest, from a reading of the instructions copied above, that there is no merit in any of these assignments of error.

[8-10] The grounds of error assigned as to the refusal of instructions Nos. 1, 2, 3, 4 and 5, requested by the defendant, are 1st, that they correctly embody the defendant's theory of justifiable self-defense, and 2nd, that since seven instructions were given for the plaintiff "all of which dealt with recovery and measures of damages, and only one of which refers even incidentally to the chief and only ground of defense," the refusal of the court to give instructions Nos. 1, 2, 3, 4 and 5 "was to give the jury a distorted, one-sided and erroneous notion of the issues before them." That "They were overwhelmed with the court's directions about damages and ever again damages." That "They heard only once or twice any reference to any possible justification for the physical impact which they heard the defendant admit he inflicted. The atmosphere in which they found themselves was that the defendant had been illegally shown to be a belligerent person, that the court thought the law had little to say in justification, but that the law is extraordinarily concerned about damages." With respect to the first ground mentioned, we need only say that instruction "I," given at the request of the defendant, as aforesaid, covered that point. With respect to the second ground stated, we will say that the instructions given are open to the

objection that they needlessly repeated the reference
to damages, but, in view of the fact that, as aforesaid,
under the evidence, no other verdict than one for some
amount of damages could have been properly found,
and that there is no assignment of error challenging
the amount of the verdict, we cannot even inquire
whether that was harmful error; and with respect to
failure of the court to repeatedly instruct the jury to
the effect that the defendant was justified in striking
the plaintiff on the ground of self-defense, of these
instructions only No. 5 correctly limited their appli-
cation to such action of the defendant as was necessary
in order to repel the danger to himself as reasonably
appeared to him at the time; and the defendant, under
the circumstances disclosed by his own testimony, was,
as aforesaid, not entitled to any instruction of justi-
fication under the claim of self-defense; and the situ-
ation, under such circumstances, was not merely that
the law "had little to say in justification," but, in
truth, nothing to say at all in justification of the con-
duct of the defendant.   But aside from that, instruc-
tion "I," given as aforesaid at the instance of the de-
fendant, gave the defendant, as aforesaid, the benefit
of his claim of self-defense, correctly limiting the appli-
cation of the law on that subject in the particular of the
necessity which must have existed for the resort to
action in self-defense.

[11] 3. Did the court err in refusing to set aside the
verdict of the jury as contrary to the evidence?

From what has been said above as to the evidence, it
is plain that there was ample evidence to support the
verdict of the jury, so that the question must be
answered in the negative.

Finally:

[12] 4. Should the case be dismissed on the motion of

the plaintiff, for the reason that the defendant did not pay the costs of printing the record within ninety days from the notice given by the clerk?

This question also must be answered in the negative.

The process on the writ of error granted in the case was issued, as appears from the evidence before us, on January 20, 1922. The case was then docketed and the clerk, on January 28, 1922, notified the plaintiff of the amount of the costs of printing the record in the case. The statute governing the subject in force at that time was section 3486 of the Code of 1919, which, so far as material, was as follows:

"* * As soon as the case is docketed after the * * * writ of error or supersedeas is allowed, the clerk of said court shall notify the appellant. * * of the amount of such costs" (the costs of printing the record), "and if the same are not paid within *six months* from the date of such notice the case shall be dismissed * * ." (Italics supplied.)

As also appears from the evidence before us, said costs were paid by the plaintiff on July 12, 1922, which was within the time required by said statute.

The position of the defendant is that the case should be dismissed under the said section of the Code as amended by act of Assembly approved February 17, 1922 (Acts 1922, p. 44), which went into effect ninety days after the adjournment of the legislature, which was before the costs of printing were paid, but after the case had been decided, following the granting of the writ of error, and after the clerk had notified the plaintiff as required by the statute as it stood at the time such proceedings were had. The statute as amended by the act approved February 17, 1922, contains the same phraseology as that above quoted from it, as it stood at the time of the proceedings last men-

tioned, except that the amended statute changed the period within which the costs of printing were required to be paid from *six months* to *ninety days* from the date of the notice from the clerk.    We are of opinion that the language of the statute is such that the amended statute is prospective, and not retrospective, in its operation; that it applies only to cases in which the appeal, writ of error or supersedeas was not granted, (*i. e.* cases in which the petition and record had not reached the hands of the clerk of the court after the appeal, writ of error or supersedeas was allowed), and which was not docketed, and the notice by the clerk had not been given, until after it went into effect; and that it had no application to the case in judgment.

Hence the motion to dismiss must be denied.

The case must therefore be affirmed.

*Affirmed.*