LEMONS, Judge,
with whom ANNUNZIATA, J., joins, concurring.
I concur in the result reached by the majority, but write separately because I find that the trial court’s ruling was proper for different reasons.
The trial court excluded the testimony of Dr. Michelle Nelson. Peeples proffered that Nelson would testify that Peeples was mildly mentally retarded and that because of “the particular way that [Peeples’s] mind is affected, he has extreme difficulty correctly interpreting social situations. He tends to miss the point exactly what is happening and reacts inappropriately.”
The relevance of such proffered testimony could be related only to three issues: 1) the mens rea element of the charge of *636 aggravated malicious wounding; 2) heat of passion upon reasonable provocation which would negate the element of malice; 3) self-defense. For the reasons stated below, the trial court properly excluded the proffered testimony.
Peeples concedes that the evidence was inadmissible on the issue of mems rea. In Stamper v. Commonwealth, 228 Va. 707, 324 S.E.2d 682 (1985), the Supreme Court of Virginia clearly rejected diminished capacity as a defense in Virginia. Following Stamper, “[t]here is no sliding scale of insanity.” Id. at 717, 324 S.E.2d at 688. Absent an insanity defense, expert testimony concerning mens rea is irrelevant to the issue of guilt. The trial judge properly excluded the proffered testimony of Dr. Nelson on the issue of mem rea.
Nonetheless, Peeples maintains that the proffered testimony should have been permitted because it was relevant to the issue of heat of passion that negates malice. Intent and malice are closely related; however, the concepts are not interchangeable.
“Heat of passion” refers to the furor brevis which renders a man deaf to the voice of reason. To establish the heat of passion defense, an accused must prove he committed the crime with “passion” and upon “reasonable provocation.”
Caudill v. Commonwealth, 27 Va.App. 81, 85, 497 S.E.2d 513, 514 (1998) (citations omitted).
This standard is objective in nature and requires that in order to negate malice, the passion produced must flow from “reasonable provocation.” Here, the proffered testimony was offered to prove that Peeples responded reasonably to social circumstances as they appeared to him. As such, it was irrelevant to establish an objective “heat of passion” defense.
Finally, Peeples maintains that the proffered testimony was relevant to his claim of self-defense.
Self-defense in Virginia is an affirmative defense, the absence of which is not an element of murder. In making this plea a defendant implicitly admits the killing was intentional and assumes the burden of introducing evidence of justifica *637 tion or excuse that raises a reasonable doubt in the minds of the jurors.
The law of self-defense is the law of necessity, and the necessity relied upon must not arise out of defendant’s own misconduct. Accordingly, a defendant must reasonably fear death or serious bodily harm to himself at the hands of his victim. It is not essential to the right of self-defense that the danger should in fact exist. If it reasonably appears to a defendant that the danger exists, he has the right to defend against it to the same extent, and under the same rules, as would obtain in case the danger is real. A defendant may always act upon reasonable appearance of danger, and whether the danger is reasonably apparent is always to be determined from the viewpoint of the defendant at the time he acted. These ancient and well-established principles have been recited to emphasize the subjective nature of the defense, and why it is an affirmative one. As Chief Justice Hudgins pointed out in Harper v. Commonwealth, 196 Va. 723, 731, 85 S.E.2d 249, 254 (1955): “ ‘What reasonably appeared to the accused at the time of the shooting, as creating the necessity for his act, is the test and not what reasonably appeared to him, provided it would so appear to some other reasonable person under similar circumstances.’ ”
McGhee v. Commonwealth, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978).
The subjective belief of the defendant, without more, however, is insufficient to establish self-defense.
In dealing with apparent danger the jury should be told that before an accused is justified in making an attack with a dangerous weapon upon his adversary he must honestly believe and must have reasonable cause to believe that he was in imminent danger of losing his life or suffering serious bodily injury.... “The bare fear that a man intends to commit murder, however well grounded, unaccompanied by any overt act indicative of such an intention, will not warrant killing the party by way of prevention.”
*638 Harper v. Commonwealth, 196 Va. 723, 730-31, 85 S.E.2d 249, 254 (1955) (citations omitted). A defendant’s “fear alone does not excuse the killing; there must be an overt act indicating the victim’s imminent intention to kill or seriously harm the accused.” Smith v. Commonwealth, 17 Va.App. 68, 71-72, 435 S.E.2d 414, 417 (1993).
The majority speaks alternatively of the “Stamper rationale” and the “Stamper principle” applying to this case. The rule of law established in Stamper is simply that diminished capacity is not a defense in Virginia. The Court noted that “[t]he shifting and subtle gradations of mental illness known to psychiatry are useful only in determining whether the borderline of insanity has been crossed.” Stamper, 228 Va. at 717, 324 S.E.2d at 688. The majority articulates the “Stamper principle” as “that the state of knowledge [in psychiatry] was not sufficiently stable and constant” and confuses the holding in Stamper with one of the stated reasons for the holding. In the process the majority states both that the “principle applies to the expert testimony proffered in the instant case” and that “this is not to say that expert testimony is never admissible in support of the defenses of heat of passion or self-defense.” The confusion between the holding and the reasoning in Stamper results in internally inconsistent propositions in the majority opinion.
The holding in Stamper addressed only the application of expert testimony to establish mens rea. Here, in claiming self-defense, the defendant implicitly admits the intentional nature of the act — the mens rea — but claims justification or excuse. Stamper does not consider the defendant’s subjective state of mind supporting a plea of self-defense. The defendant’s state of mind at the time of the shooting and how the circumstances reasonably appeared to him at that time are critical issues in determining self-defense. See Jones v. Commonwealth, 217 Va. 226, 229, 228 S.E.2d 124, 125 (1976). Expert testimony that does not usurp the jury’s function is admissible in support of a plea of self-defense. See Mobley v. State, 269 Ga. 738, 505 S.E.2d 722, 723 (1998) (“expert testimony on battered person syndrome is admissible in murder cases *639 to assist the jury in evaluating the defendant’s claim of self-defense”); Smith v. State, 247 Ga. 612, 277 S.E.2d 678 (1981); see also State v. Nemeth, 82 Ohio St.3d 202, 694 N.E.2d 1332 (1998) (expert testimony on battered child syndrome is admissible in murder cases in evaluating a defendant’s self-defense claim). This is not such a case.
Peeples’s version of the events as they subjectively appeared to him does not support a claim of self-defense. Without more than a scintilla of evidence to support such a defense, expert opinion in aid of it is properly excluded by the trial judge. Peeples said that he feared Paul (the victim) because of his reputation for violence, but testified that it was “Bubba,” (Harvey) who, according to Peeples, was standing away from Paul, who made a “reaching” movement toward his waistband. Peeples saw no weapon in Paul’s or Bubba’s possession. Nonetheless, Peeples shot Paul not “Bubba.” In order to justify the use of deadly force, Peeples must have reasonably feared death or serious bodily injury from his victim.
Finally, even if the refusal to admit Dr. Nelson’s testimony was error, it was harmless. As non-constitutional error, the test we must apply is whether it “has affected the verdict.” Lavinder v. Commonwealth, 12 Va.App. 1003, 1005, 407 S.E.2d 910, 911 (1991). A review of this record demonstrates that the proffered testimony could have had no effect upon the verdict. The use of excessive force clearly exceeded any claim to self-defense that Peeples may have asserted. “[T]he amount of force used must be reasonable in relation to the harm threatened.” Diffendal v. Commonwealth, 8 Va.App. 417, 421, 382 S.E.2d 24, 25 (1989). Uncontradicted forensic evidence involving trajectory of the bullets was consistent with the victim’s testimony that he was initially shot while standing, was shot again in the abdomen and the chest while lying on the ground, and finally was shot in the back of the head while lying on the ground. Even if Peeples had been threatened, he lost all justification he may have had by continuing to shoot the victim after the victim had been immobilized and posed no threat whatsoever. No reasonable juror could have found otherwise on this record. As the Supreme Court of Virginia *640 stated in Rozier v. Commonwealth, 219 Va. 525, 528, 248 S.E.2d 789, 791 (1978):
Error committed in the trial of a criminal case does not automatically require a reversal of an ensuing conviction if the error is harmless. Code § 8.01-678. In the present case, the properly admitted evidence of defendant’s guilt is overwhelming.... The evidence presents no reasonable possibility that the jury would have found the Commonwealth’s case less persuasive had the ... evidence complained of been [allowed]. The jury could have reached no verdict, other than a verdict of guilty, that would have been consistent with the evidence if the objectionable evidence had been [allowed]. Hence, we hold that admission of the evidence complained of was harmless.
I find that the trial court properly excluded the proffered testimony of Dr. Nelson and that even if error did occur in the refusal to admit the testimony, the error was harmless. I would affirm the convictions.