COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, O'Brien and Lorish
Argued at Lexington, Virginia

WILLIAM GREG AKERS, III

v.       Record No. 0620-24-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE RANDOLPH A. BEALES
JUNE 17, 2025

FROM THE CIRCUIT COURT OF WYTHE COUNTY
Josiah T. Showalter, Jr., Judge

John S. Koehler (M. Brandon Ayers; The Law Office of James
Steele, PLLC; M. Brandon Ayers, PLLC, on brief), for appellant.

Sheri H. Kelly, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a jury trial, the Circuit Court of Wythe County convicted William Greg Akers,

III of first-degree murder, in violation of Code § 18.2-32, and use of a firearm in the commission

of a felony, in violation of Code § 18.2-53.1.  On appeal, Akers argues that the trial court abused

its discretion by excluding evidence that he contends was relevant to his self-defense claim.

I.  BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, [as] the prevailing party at trial."  *Gerald v.*

*Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381

(2016)).  "This principle requires us to 'discard the evidence of the accused in conflict with that

of the Commonwealth, and regard as true all the credible evidence favorable to the

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

Commonwealth and all fair inferences to be drawn therefrom.'" *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

The evidence presented at trial established that on June 21, 2020, around 11:23 p.m., Akers and his friend, Tyler Burack, purchased marijuana from Matthew King at a gas station in Wythe County, Virginia. Shortly thereafter, Akers and Burack agreed to send King a text message questioning whether they had received the actual amount of marijuana that they believed they had purchased. Although King did not respond to the text message, he subsequently returned to the gas station in his truck with three other individuals, including Jace Rediker. Video surveillance footage from the gas station showed that King parked his truck a couple feet away from where Akers and Burack had been sitting. During a subsequent police interview, Akers told Captain Christopher Terry of the Wythe County Sheriff's Office that he had a concealed firearm in his front left pants pocket at that time. Akers then stood up and approached King as King got out of his truck. King, Akers, and Burack talked among themselves for a couple minutes. During the conversation, Burack made several animated gestures towards King, but King stood still. As Burack walked away from the conversation, Akers reached down into his left front pocket for his firearm. King then took a single step towards Akers, and Akers fired a single shot at King, striking him in the head and killing him. Akers told the police that he then ran to his parents' home.

Less than an hour after the homicide, Chief Deputy Sheriff Anthony Cline of the Wythe County Sheriff's Office transported Akers from his parents' house back to the gas station where the homicide had occurred. During that time, Akers made several "spontaneous statements" in the back seat of Cline's vehicle. Akers initially claimed that he had acted in self-defense. He then stated that he had accidentally pulled the trigger on the gun. He later stated that he was "so fucked up" that he did not even know what had happened. Cline testified at trial that, based on his 22 years of experience in law enforcement and his involvement in hundreds of arrests of intoxicated

- 2 -

individuals, he did not perceive any indication that Akers was intoxicated at the time. While being transported in the officer's vehicle, Akers audibly sighed and then asked where he would be staying that night. Akers again sighed and stated that "there [was] no getting out of it" and that he never thought he would be in this situation.

During the early morning hours of June 22, 2020, Captain Terry spoke to Akers as part of his investigation into the homicide. Akers claimed that King had returned to the gas station "like a bat out of hell" and that he had "just about ran over me and my buddy." According to Akers, when King got out of his truck, King "immediately jumps in [his] and [Burack's] face." Akers then stated that King "said something about beating our asses." He described King as a "big dude" in contrast to his own smaller stature. Akers also claimed that Burack had mentioned King "having a gun or something like that." Akers then stated that, to the best of his knowledge, he was the only one who had been armed. He later claimed that King "didn't say anything about his guns tonight, but [Burack] said something about guns, and then [King] said something about guns." Akers then explained, "I was like, 'I don't know what the fuck's about to happen,' so I pulled my gun." The police did not find a gun in King's truck or near his body during the investigation at the crime scene.

At trial, Akers's counsel did not dispute that Akers had shot and killed King, but he maintained that Akers had done so in self-defense and out of fear for his own safety. During Rediker's testimony, Akers's counsel asked him whether he had "hear[d] anybody make any statements" during the interaction and subsequent shooting between Akers and King. Outside the presence of the jury, the attorney for the Commonwealth objected to the question on hearsay grounds. Akers's counsel proffered that he wanted to introduce certain statements made by Burack and King to explain the effect of their statements on Akers and "why he pulled the firearm." The attorney for the Commonwealth countered that only Akers could testify to the effect that the statements had on him. After the trial court sustained the Commonwealth's objection, Akers's

counsel proffered that Rediker would have testified that during the discussion in the parking lot, Burack told King that "there's two of us and one of you, and we both got guns," to which King responded by saying, "Prove it."

When Rediker resumed his testimony at trial, he stated, without recounting the exact statements made, that there was "some tension" in the exchange and that people were speaking somewhat loudly before the shooting. Akers's counsel then asked Rediker whether the statements that he heard had worried him. Rediker testified that he had not feared an outbreak of physical violence, but that he had worried about the "verbal context" of the situation.

During closing argument, Akers's counsel argued that once King "drove that truck in there like a bat out of hell," Akers was terrified "that this two hundred twenty pound man was going to beat him" and "whip [his] ass." While replaying the video surveillance footage, Akers's counsel urged the jury to focus on King's act of taking a step toward Akers before the gunshot. Akers's counsel also argued that Akers had been "trying to save himself" when he shot King.

The trial court instructed the jury on first-degree murder, second-degree murder, involuntary manslaughter, accident, and excusable self-defense. The jury subsequently convicted Akers of first-degree murder and use of a firearm in the commission of a felony. Akers now appeals his convictions to this Court.

## II. ANALYSIS

On appeal, Akers argues, "The circuit court erred in sustaining the Commonwealth's objection to the admission of hearsay statements during the testimony of Jace Rediker where the statements were not offered for their truth but to show their impact on the Defendant as relevant to his assertion of self-defense." He contends that he has "consistently maintained from the time of the shooting that he drew his weapon in response to King's challenge to prove that Akers and Bura[c]k were armed out of concern for his safety."

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Bazemore v. Commonwealth*, 82 Va. App. 478, 495 (2024) (quoting *Wolfe v. Commonwealth*, 67 Va. App. 97, 106 (2016)). "In evaluating whether a trial court abused its discretion, . . . 'we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action.'" *Carter v. Commonwealth*, 293 Va. 537, 543 (2017) (alteration in original) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). "The abuse-of-discretion standard [also] includes review to determine that the discretion was not guided by erroneous legal conclusions." *Id.* at 543-44 (alteration in original) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)). "On appellate review of issues involving the admissibility of evidence, the Court views the evidence in the light most favorable to the Commonwealth as the party who prevailed below." *Bazemore*, 82 Va. App. at 495 (quoting *Haas v. Commonwealth*, 71 Va. App. 1, 5 n.1 (2019), *aff'd in part and vacated in part*, 299 Va. 465 (2021)).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). *See also Commonwealth v. Swann*, 290 Va. 194, 197 (2015) (noting that "hearsay 'includes testimony given by a witness who relates what others have told him'" (quoting *Lawrence v. Commonwealth*, 279 Va. 490, 496 (2010))). "Hearsay evidence is inadmissible unless it falls within one of the recognized exceptions to the hearsay rule, and the party attempting to introduce a hearsay statement has the burden of showing the statement falls within one of the exceptions." *Riner v. Commonwealth*, 268 Va. 296, 336 (2004) (quoting *Robinson v. Commonwealth*, 258 Va. 3, 6 (1999)). For example, the general prohibition against admitting hearsay does not exclude a statement offered "merely for its effect on the listener," *Jones v. Commonwealth*, 71 Va. App. 70, 91 (2019), or a statement offered "for the mere purpose of explaining or throwing light on the

conduct of the person to whom it was made," *Garcia v. Commonwealth*, 21 Va. App. 445, 451 (1995) (*en banc*) (quoting *Fuller v. Commonwealth*, 201 Va. 724, 729 (1960)).

Assuming without deciding that the trial court here erred in excluding Rediker's testimony about the statements made by Burack and King, we hold that any such error was harmless. *See Commonwealth v. White*, 293 Va. 411, 419 (2017) (observing the duty of appellate courts to decide cases on the best and narrowest ground and noting that one such ground may be concluding that any error was harmless). It is well-settled that "evidentiary errors are subject to non-constitutional harmless error review." *Jones*, 71 Va. App. at 91. "Non-constitutional error is harmless '[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" *Salahuddin v. Commonwealth*, 67 Va. App. 190, 212 (2017) (alteration in original) (quoting Code § 8.01-678). "'If, when all is said and done,' the reviewing court is 'sure that the [non-constitutional] error did not influence the jury, or had but slight effect, the verdict and the judgment should stand.'" *Smith v. Commonwealth*, 72 Va. App. 523, 543 (2020) (alteration in original) (quoting *Clay v. Commonwealth*, 262 Va. 253, 260 (2001)); *see also Shifflett v. Commonwealth*, 289 Va. 10, 12 (2015) (noting that an appellate court will not reverse "evidentiary errors that were harmless to the ultimate result"). Thus, a non-constitutional error is harmless "where 'other evidence of guilt is so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict.'" *Smith*, 72 Va. App. at 543 (quoting *Salahuddin*, 67 Va. App. at 212).

"Self-defense is an affirmative defense . . . and in making such a plea, a 'defendant implicitly admits the killing was intentional and assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the minds of the jurors.'" *Bell v. Commonwealth*, 66 Va. App. 479, 486 (2016) (alteration in original) (quoting *Commonwealth v.*

*Cary*, 271 Va. 87, 99 (2006)); *see also McGhee v. Commonwealth*, 219 Va. 560, 562 (1978) (same). The Supreme Court has explained:

> To establish a claim of self-defense, a defendant must show that he reasonably feared death or serious bodily harm at the hands of his victim. Whether the danger is reasonably apparent is judged from the viewpoint of the defendant at the time of the incident. The defendant must also show that he was in imminent danger of harm, that is, a showing of an overt act or other circumstance that affords an immediate threat to safety.

*Carter*, 293 Va. at 544 (quoting *Hines v. Commonwealth*, 292 Va. 674, 679 (2016)). "In order to justify an accused in striking another with a deadly weapon, as the accused admits he did in this case, a threatening attitude alon[e] affords no justification." *Harper v. Commonwealth*, 196 Va. 723, 733 (1955). Rather, the accused "must demonstrate 'an immediate, real threat to one's safety.'" *Small v. Commonwealth*, 292 Va. 292, 299 (2016) (quoting *Commonwealth v. Sands*, 262 Va. 724, 729 (2001)).

"An overt act is an act suggesting present danger which 'afford[s] a reasonable ground for believing there is a design . . . to do some serious bodily harm, and imminent danger of carrying such design into immediate execution.'" *Jones*, 71 Va. App. at 86 (alterations in original) (quoting *Sands*, 262 Va. at 729). "'[B]are fear that a person intends to inflict serious bodily injury on the accused, however well-grounded,' is insufficient without an overt act." *Id.* (alteration in original) (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 975 (1977)). Even in the context of a victim stating that he "should shoot" the defendant, we have held that "[m]erely reaching toward one's waistband is insufficient as a matter of law" to establish "more than a scintilla of evidence of an overt act reasonably likely to cause fear." *Id.* at 87, 89.

In this case, Rediker's excluded testimony—i.e., that King had challenged Burack to "prove" his claim that he and Akers were armed—was insufficient to establish an overt act "suggesting present danger" that would have justified Akers's use of deadly force in this

situation. *See id.* at 86. The record before this Court on appeal established that King was unarmed, and the context of the entire statement demonstrates that Burack—not King—was the actual aggressor. Even if the jury credited Akers's claims concerning King's larger size and his "threatening attitude," those circumstances, standing alone, were insufficient to support Akers's self-defense claim because King never made an overt act "suggesting present danger." *See id.* Indeed, the surveillance video shows that King took a single step toward Akers only *after* Akers reached into his front pants pocket to retrieve his firearm.

Furthermore, the evidence of premeditation in this case was overwhelming. The Supreme Court has stated:

> In deciding [whether premeditation and deliberation exist], the jury may properly consider the brutality of the attack, and whether more than one blow was struck, the disparity in size and strength between the defendant and the victim, the concealment of the victim's body, and the defendant's lack of remorse and efforts to avoid detection.

*Avent v. Commonwealth*, 279 Va. 175, 208 (2010) (alteration in original) (quoting *Epperly v. Commonwealth*, 224 Va. 214, 232 (1982)). The record before this Court on appeal supports a finding that Akers and Burack sent King a text message to lure him to the confrontation. After King arrived and a tense conversation had ensued, Akers, who was armed, then fired a single shot, striking an unarmed King in the head at close range and killing him. Instead of summoning medical attention for the wounded King, however, Akers fled the gas station and went to his parents' home. While in police custody less than an hour after the fatal shooting, Akers appeared upset but expressed no concern for King and no remorse for shooting him. *See Knight v. Commonwealth*, 41 Va. App. 617, 626 (2003) ("The jury could determine from this evidence that his emotions were the result of concern for his own predicament and not regret over his actions."). In short, because there was ample evidence to support the jury's finding of a premeditated killing in the first degree, any error by the trial court in excluding the statements was harmless.

## III.  CONCLUSION

In short, assuming without deciding that the trial court in this case erred by excluding Rediker's testimony about the statements made by Burack and King, we hold that any such error was harmless because the excluded testimony did not establish that King committed an overt act that would excuse Akers's use of deadly force.  Therefore, for the foregoing reasons, we do not disturb the judgment of the trial court.

*Affirmed.*