UPON A REHEARING EN BANC.
ELDER, Judge.
Genev Denise Clark (appellant) appeals from her bench trial conviction for assault in violation of Code § 18.2-57. On appeal, she contends the evidence was insufficient to support her conviction because it failed to prove “an overt act or attempt to physically harm” the alleged victim. A panel of this Court agreed, holding by a vote of two to one that the evidence was insufficient to prove the necessary overt act. See Clark v. Commonwealth, No. 2656-07-2, 2008 WL 5330518 (Va.Ct.App. Dec. 23, 2008). Pursuant to the Commonwealth’s petition for a rehearing en banc, we stayed the mandate of that decision and granted a rehearing en banc. On rehearing en banc, we hold the totality of the circumstances, viewed in the light most favorable to the Commonwealth, establishes appellant committed an overt act sufficient to support her conviction for assault under the tort law definition of that offense, as assimilated into Virginia’s criminal law.[1] Thus, we affirm appellant’s conviction for assault in violation of Code § 18.2-57.
*124 I.
BACKGROUND
Under settled principles, we recite the facts in the light most favorable to the Commonwealth, the party prevailing in the trial court, as required by our standard of review on appeal. See, e.g., Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).
As of Monday, May 7, 2007, Carolyn Coleman was a bus driver for students at Lakeside Elementary School in Henrico County. Appellant was a food services employee at that school, and her children attended school there and rode Coleman’s bus to and from school. On that date, Coleman had “some type of problem [on the bus] with [appellant’s] son,” and, as a result, Coleman “ask[ed] the school administrators to not allow [appellant’s] son to ride the bus for a period of time.” The principal called appellant that afternoon and told her that her son “[could not] ride the bus until Thursday when we had [a] school meeting with Ms. Coleman and her supervisor.”
Around 7:00 a.m. the next day, Tuesday, May 8, 2007, Coleman arrived at the school in her bus to drop off her riders, but she had to wait for the school to open and for someone to come out to meet them. Coleman drove into the bus circle to the location in front of the school where she was required to park to drop off the students. The bus circle was “reserved exclusively for ... buses ... dropping [off] and picking up children,” and “a lot” of signs so indicating were posted in the bus circle. An employee parking lot was on the school grounds “about maybe 50 feet” from the bus circle.
Coleman’s bus was the first to arrive that morning, as it was every morning. When Coleman pulled her bus into the bus circle, she saw an automobile parked at the head of the circle; Coleman pulled in directly behind the car in order to “pull right up in front of the door” of the school as she was required to do. Other buses pulled into the bus circle behind her. Coleman testified without objection that the car “was parked to [block] her in so that she could not get out.” Another bus *125 driver, Susan Bernstein, confirmed that appellant’s vehicle was “parked directly in front” of Coleman’s bus. Bernstein testified that the way appellant parked both “block[ed]” in Coleman’s bus and also “block[ed] all of us [bus drivers] from moving.”[2]
Coleman saw appellant and her son, the student who had been temporarily banned from riding Coleman’s bus, standing in the vicinity of the car. Coleman then opened her bus door to allow a student to get on the bus to wait because the school was not yet open. As Coleman did so, appellant approached the open bus door. While standing within “about ... two feet of the bus,” appellant said, “I told you I’m going to get you, bitch, don’t care, I don’t care where you at, if you’re on the school ground, if you’re in the school, or you’re in the grocery store,” “[I’m going to] [f]uck you up.” Appellant had “her arms across ... her chest[ ] and her lips pursed,” and “[s]he was obviously unhappy.” Coleman shut the door of her bus, called the north office, and told them she needed a supervisor and a police officer. Coleman reported that appellant was “harassing her saying that she’s going to pull her off the bus and beat her up.” Appellant remained standing a few feet from the bus door cursing at Coleman until “[the] principal came up.”
*126 Around 4:20 p.m. that same day, Coleman again pulled her bus into the bus circle for “after school activity pick-up.” When Coleman first pulled in, she did not see appellant, and she opened the bus door “so [she could] step off to go around the other side.” Before Coleman could get off the bus, however, appellant again appeared outside her bus door and said, “Bitch, like I say, I’m going to get you.” Coleman immediately closed her bus door and remained inside instead of exiting as she had planned. Appellant remained standing outside the bus.[3]
*127 Appellant was charged with assault, and at her trial for that offense, the Commonwealth offered evidence of these events in keeping with the above. At the close of the Commonwealth’s evidence and again at the close of all the evidence, appellant moved to strike, contending her words alone were insufficient to constitute an assault. The Commonwealth responded that the evidence proved “much more than her words alone.” It pointed to appellant’s parking her vehicle, despite no parking signs, in a location calculated to block the bus; “[appellant’s] physically coming toward the bus” and confronting Coleman; and appellant’s “coming back” later the same day and again confronting Coleman “with the same language and the same threats.” It argued that all of appellant’s actions, viewed in their totality and in light of her threats, constituted the overt act necessary to prove assault.
The trial court convicted appellant for the charged offense, noting the “confrontation” and appellant’s “[putting] her car in front of this bus where it’s not supposed to be during the day. [Appellant] has confronted the bus driver twice with the language, which I would find from the evidence, can be considered a present threat.”
Appellant noted this appeal.
II.
ANALYSIS
“On appeal, ‘we review the evidence in the light most favorable to the Commonwealth, granting to [the evidence] all reasonable inferences fairly deducible therefrom.’ ” Archer v. Commonwealth, 26 Va.App. 1, 11, 492 S.E.2d 826; 831 (1997) (quoting Martin v. Commonwealth, 4 Va.App. 438, 443, 358 S.E.2d 415, 418 (1987)). The trier of fact is free to believe or disbelieve in part or in whole the testimony of any witness. E.g. Rollston v. Commonwealth, 11 Va.App. 535, 547, 399 S.E.2d 823, 830 (1991).
Appellant was convicted for misdemeanor assault in violation of Code § 18.2-57. “Because [Code § 18.2-57] does *128 not define assault, we [must] look to the common law definition of the term.” Carter v. Commonwealth, 269 Va. 44, 47, 606 S.E.2d 889, 841 (2005). Virginia, like many jurisdictions, “has merged the common law crime and tort of assault so that today, a common law assault [punishable as a criminal offense] occurs when either set of elements is proved.” Id. at 46, 606 S.E.2d at 841 (noting that this dual definition has been the law in Virginia since at least the Court’s decision in Burgess v. Commonwealth, 136 Va. 697, 706-08, 118 S.E. 273, 275-76 (1923)); see Lamb v. State, 93 Md.App. 422, 613 A.2d 402, 408, 409 (1992) (recognizing “ ‘a majority of the jurisdictions’ ” have assimilated the tort theory into the crime of assault and opining that the assimilated part of the offense “mirrors the tort precisely in terms of its character and its necessary elements” (quoting Rollin M. Perkins & Ronald N. Boyce, Criminal Law 161-62 (3d ed.1982))). An assault occurs under the traditional criminal definition “when an assailant engages in an overt act intended to inflict bodily harm and has the present ability to inflict such harm.” Carter, 269 Va. at 47, 606 S.E.2d at 841. An assault occurs under the merged tort law definition when an assailant “engages in an overt act intended to place the victim in fear or apprehension of bodily harm and creates such reasonable fear or apprehension in the victim.” Id. As we elaborated in our en banc decision in Carter, “ ‘a tortious injury may be committed by threats and menaces of bodily hurt, through fear of which a man’s business is interrupted. A menace alone, without a consequent inconvenience, makes not the injury, but to complete the wrong there must be both of them together[—an overt act both intended to cause and actually causing a reasonable fear of bodily harm in the victim].’ ” Carter v. Commonwealth, 42 Va.App. 681, 687-88, 594 S.E.2d 284, 288 (2004) (en banc) (indicating that although this language originated in Blackstone’s discussion of “private wrongs,” he also incorporated it into his subsequent discussion of “public wrongs”) (quoting 3 William Blackstone, Commentaries *120 (emphasis added in Carter)), aff'd, 269 Va. 44, 606 S.E.2d 839 (2005). Under *129 either definition, the bodily harm threatened need not be serious or deadly harm. See id. at 693-94, 594 S.E.2d at 291.
Our case law is clear that words alone are never sufficient to constitute an assault under either the traditional criminal definition of assault or the assimilated tort definition. See, e.g., Bennett v. Commonwealth, 35 Va.App. 442, 449, 546 S.E.2d 209, 212 (2001) (decided under the criminal definition). However, “[w]ords are never spoken in a vacuum, and they cannot be utterly divorced from past conduct, or from the accompanying circumstances.” Restatement (Second) of Torts § 31 cmt. d (1965). A defendant’s words may be highly relevant under both definitions of assault to determining, for example, whether the defendant committed the required overt act with the necessary intent. See, e.g., Campbell v. Commonwealth, 12 Va.App. 476, 484, 405 S.E.2d 1, 4 (1991) (en banc) (noting that intent may and often must be proved with circumstantial evidence, such as “the conduct and statements of the alleged offender”). Additionally, the defendant’s words may be highly relevant under the tort law definition of assault to determining whether the “fear or apprehension in the victim” was “reasonable.” See Carter, 269 Va. at 47, 606 S.E.2d at 841.
Although an overt act must be proved to support a conviction under either definition of assault, the intent with which the overt act must have been committed" is different under the two definitions of assault. Id. Under the criminal definition of assault, the overt act must have been committed with the actual “intenftj to inflict bodily harm” and the perpetrator must have a present ability to inflict such harm; under the tort law definition, by contrast, the overt act may be committed merely with the “inten[t] to place the victim in fear or apprehension of bodily harm” where the act “creates such reasonable fear or apprehension in the victim.” Id. (emphasis added). Because, absent more direct evidence, the perpetrator’s intent must be inferred from the nature of the overt act and surrounding circumstances, the nature of the overt act sufficient to prove assault under the criminal definition often *130 will be different from the nature of the overt act sufficient to prove assault under the tort law definition.[4] Cf. 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 16.3, at 569 (2d ed.2003) (recognizing that, although both are crimes, the “intention to cause bodily harm” required to prove assault under the traditional criminal “attempted battery” definition is more culpable than the “intention to cause apprehension” required to prove assault under the assimilated tort definition); Restatement, supra, § 31 cmt. d, illus. 4 (opining that where A has made a previous threat to kill B, “B [later rounds a corner] and encounters A standing on the sidewalk,” and A, “[w]ithout moving, ... says to B, ‘Your time has come[,]’ ” A may be held to have committed the tort of assault). Nevertheless, to prove assault under either definition, a sufficient causal nexus must exist among the elements of the offense—under the criminal definition, the perpetrator must commit the overt act with the intent to inflict bodily harm and have the present ability to inflict that harm; under the tort definition, the perpetrator must commit the overt act with the intent to place the victim in fear of bodily harm and the overt act must create reasonable fear in the victim.
Appellant compares the facts in Bennett v. Commonwealth, 35 Va.App. 442, 546 S.E.2d 209 (2001), in which we reversed a defendant’s assault conviction, to those in her case and concludes the evidence here is more deficient than in Bennett, necessitating the reversal of appellant’s assault conviction, as well. Bennett is both factually and legally distinguishable, and the facts in appellant’s case, viewed in the light most favorable to the Commonwealth, are sufficient to support her conviction *131 for assault under the assimilated tort law definition of the crime.
In Bennett, the defendant was in his own home on the telephone when his fourteen-year-old daughter allowed two police officers looking for him to enter the home. Id. at 446, 546 S.E.2d at 211. Bennett told the officers to “ ‘get out of the house.’ ” Id. When the officers began to explain they were present to investigate a complaint the man had made, he approached the officers from a distance of twenty feet, and when he was about two inches away, he repeated his order to them to get out of his house, yelled profanities, and made a conditional threat, stating that, “ ‘if [the deputies] didn’t leave, it would be an “F” ing blood bath.’ ” Id. at 446-47, 546 S.E.2d at 211 (emphasis added). The defendant then telephoned the state police and asked them to come remove the deputies. Id. at 447, 546 S.E.2d at 211. Although the deputies testified they felt threatened by Bennett’s behavior and asked him to “ ‘back off,’ ” Bennett was not armed, the deputies saw no weapons inside his house, and he did not raise his hands to the deputies or physically threaten them before they left. Id.
In reversing the defendant’s conviction in Bennett, which we did in a panel decision, we made no clear distinction between the criminal and tort law definitions of assault, and we analyzed the evidence only under the definition of assault requiring proof of an overt act “ ‘accompanied with circumstances denoting an intention coupled with a present ability of using actual violence,’ ” language tracking the criminal definition. Id. at 449, 546 S.E.2d at 212 (quoting Harper v. Commonwealth, 196 Va. 723, 733, 85 S.E.2d 249, 255 (1955)). Further, although we did not specifically articulate it in our decision in Bennett, the evidence proved the threat the defendant made was a conditional one—“fljfljou don’t] leave, it [will] be an ‘F’ ing blood bath.” Id. at 446-47, 546 S.E.2d at 211 (emphasis added). We noted “Bennett was not armed and made no threatening gestures with his hands” and that, “[although Bennett stood within inches of the officers, he made no overt act or attempt to physically harm either officer during the time the officers remained in his home after being asked to *132 leave.” Id. at 449-50, 546 S.E.2d at 212. Bennett’s only act after making the conditional verbal threat to cause a “blood bath” was to telephone the state police and ask them to come remove the deputies. Thus, the circumstances failed to support a finding that Bennett had either an actual intention to batter or a present ability to do so in the fashion he had threatened.
In appellant’s case, by contrast, the totality of the evidence, viewed in the light most favorable to the Commonwealth, supported a finding that appellant assaulted Coleman under the second definition of assault—the assimilated tort definition—by “engaging] in an overt act intended to place the victim in fear or apprehension of bodily harm and creating] such reasonable fear or apprehension in the victim.” See Carter, 269 Va. at 47, 606 S.E.2d at 841. As the holding in Carter made clear, in order to prove this type of assault, the Commonwealth was not required to establish that appellant had a present ability or intention to inflict harm because the evidence established that appellant “act[ed] in a manner intended to put the victim in reasonable fear or apprehension and cause[d] the victim such reasonable fear or apprehension.” Id. at 49, 606 S.E.2d at 842.
In appellant’s case, victim Coleman did not approach appellant, the perpetrator of the assault, as originally occurred in Bennett when the officers entered Bennett’s home; rather, Coleman was performing her job as a school bus driver when appellant approached her, and appellant did so on not one but two different occasions in the same day. On the first occasion, the morning after Coleman took action that resulted in appellant’s son’s being suspended from riding Coleman’s school bus for a period of time, appellant parked her car in the bus circle at the school in such a manner that Coleman was forced to pull her bus up directly behind appellant’s car. Appellant, a school employee as well as a parent, parked in this location despite the existence of both (i) prominently posted signs indicating cars were not allowed in the bus circle and (ii) an on-premises employee parking lot located about fifty feet away *133 from the bus circle. Coleman, always the first bus driver to enter the circle in the morning, pulled up in the bus circle as far as she could, as her job duties required her to do, and one or more buses pulled in behind Coleman’s bus. Due to the presence of appellant’s car, Coleman was unable to move her bus out of the circle. Coleman testified without objection that appellant’s car “was parked to [block] her in so that she could not get out.” Fellow bus driver Susan Bernstein also testified that appellant parked “directly in front” of Coleman’s bus, “blocking” both Coleman and “all of us [bus drivers] from moving.” Thus, the totality of the circumstances, viewed in the light most favorable to the Commonwealth, established that appellant’s actions blocked the only means by which Coleman might have escaped by bus.
When Coleman opened the door of her bus, the “obviously unhappy” appellant—with her arms “across ... her chest” and “her lips pursed”—approached the open door and said, “I told you I’m going to get you, bitch, don’t care, I don’t care where you at, if you’re on the school ground, if you’re in the school, or you’re in the grocery store,” “[I’m going to] [f]uck you up.” Coleman, reasonably fearing for her safety, immediately shut the door of her bus, phoned for a supervisor and a police officer, and reported that appellant was “harassing her saying that she’s going to pull her off the bus and beat her up.” Appellant stood only a few feet away from Coleman’s closed bus door cursing at Coleman until “[the] principal came up.” Thus, appellant also blocked Coleman’s only reasonable means of escaping on foot.
Appellant ceased both her verbal harassment and her physical blockade of Coleman that morning when the principal arrived on the scene, but appellant renewed these actions later that same day. When Coleman pulled her bus into the bus circle again at about 4:30 p.m. that afternoon for “activity pickup,” appellant was not visible. However, as soon as Coleman opened the door to her bus, intending to disembark, appellant again appeared within a few feet of the bus door and said, “Bitch, like I say, I’m going to get you.” No evidence indicated that appellant’s children were with her at the time or *134 that appellant was on school premises for any reason other than to renew her verbal and physical confrontation with Coleman, and the trial court specifically found appellant posed “a present threat” that afternoon, as distinguished from the conditional threat posed in Bennett. Coleman immediately closed her door instead of exiting the bus as she had planned, and appellant remained standing outside the bus.
The events of the morning and afternoon, viewed in their totality and specifically including appellant’s physically blocking both Coleman’s bus and Coleman herself from exiting the bus, indicated appellant’s intent to make good on her threat. Because of appellant’s reappearance that afternoon and Coleman’s fear of appellant, Coleman hurriedly closed the door of her bus and remained inside. Appellant’s reappearance and maintenance of a position outside Coleman’s bus, just as Coleman was preparing to disembark, once again effectively blocked Coleman’s exit from the bus. Appellant’s direct physical blocking of Coleman’s only reasonable means of escape, in combination with her earlier blocking of both Coleman’s bus and her person and her renewed verbal attack—which the trial court expressly found posed “a present threat” rather than a conditional one—constituted an overt act that was “intended to place the victim in fear or apprehension of bodily harm” and that actually “create[d] such reasonable fear or apprehension in the victim.”[5] Carter, 269 Va. at 47, 606 *135 S.E.2d at 841; Restatement, supra, § 31 cmt. d (“Words are never spoken in a vacuum, and they cannot be utterly divorced from past conduct, or from the accompanying circumstances.” (emphases added)). The totality of these circumstances was sufficient to prove the necessary overt act under the assimilated tort law definition.
III.
For these reasons, we hold the totality of the circumstances, viewed in the light most favorable to the Commonwealth, supported appellant’s conviction for assault under the assimilated tort law definition, and we affirm that conviction.

Affirmed.

. Clark has not challenged, either at trial or on appeal, the sufficiency of the evidence to prove any other element of the offense. See infra note 5.

. When the Commonwealth asked Bernstein, "[W]as there any way based on where [appellant’s car] was that buses could come and go?,” Bernstein responded that buses "could get around [appellant's car], yes, sir.” Viewing all of Bernstein's and Coleman's testimony in the light most favorable to the Commonwealth, as required by our standard of review, the fact finder had at least two options with regard to Bernstein's testimony that the buses "could get around [appellant’s car].” It could have concluded Bernstein's testimony that other buses could pass contradicted her testimony that the way appellant parked "block[ed] all of us [bus drivers] from moving.” On this basis, the trial court was permitted to reject Bernstein's testimony that the buses "could get around [appellant's car].” Alternatively, the trial court could have reconciled these apparent conflicts, interpreting Bernstein’s statement as meaning that the buses in the curbside line were blocked in because, like Coleman, they had parked almost bumper-to-bumper as required to discharge their passengers as close as possible to the school's front doors but that the bus lane nevertheless was wide enough to allow passage on the side of the bus line by any buses not blocked in so as to prevent forward motion.

. The record contained conflicting evidence regarding how far Clark stood from the bus during the two encounters. Bernstein, who observed the morning incident, testified Clark stood within "about two feet of [Coleman's] bus.” Coleman estimated in the trial court that the distance during the morning encounter was "[fjrom here to where this little thing is” and that the distance during the afternoon encounter was "[t]he same” as in the morning. The prosecutor thought the distance Coleman indicated was "approximately four or five feet,” but the trial court said, "Well, let the record reflect it's about ten feet." In denying Clark’s motion to strike the Commonwealth’s evidence, the trial court recited the facts for the purpose of ruling on that motion as showing that, during the afternoon encounter, Clark “confront[ed] [Coleman] again within ten feet of her.” (Emphasis added). Neither of these statements constituted a finding that the trial court accepted Coleman's testimony about distance in the morning incident over Bernstein's or that it found the distance during either incident was ten feet rather than two feet. In later convicting Clark of the charged offense, the trial court did not mention this distance.
Thus, the record indicates the trial court made no express finding regarding the distance Clark stood from the bus when she twice confronted Coleman, and the applicable standard of review on appeal requires us to view the evidence on this point in the light most favorable to the Commonwealth. The evidence, so viewed, indicated that distance during the morning confrontation was "about two feet,” and Coleman testified Clark stood “[t]he same distance” from Coleman's bus in the afternoon as she had stood in the morning, supporting a finding that Clark stood "about two feet” from Coleman's bus during the afternoon, as well.
For these reasons, we do not accept the dissent's assertion that “the trial court found” Clark "never approached closer than ten feet from the bus.” See infra at 138, 676 S.E.2d at 341; cf. Clark v. Commonwealth, No. 2656-07-2, 2008 WL 5330518, at *2, 2008 Va.App. Lexis 560, at *4 (2008) (acknowledging that “Clark stood approximately two feet from the bus” during the morning encounter).

. The Supreme Court has recognized the following overt acts may be sufficient under the criminal definition:
"striking at [the victim] with a stick or other weapon, or without a weapon, though he be not struck, or even by raising up the arm or a cane in a menacing manner, by throwing a bottle of glass with an intent to strike, by leveling [sic] a gun at another within a distance from which, supposing it to be loaded, the contents might injure, or any similar act."
Harper v. Commonwealth, 196 Va. 723, 733, 85 S.E.2d 249, 255 (1955) (quoting J.A.G. Davis, Criminal Law 353-54 (1838)).

. Appellant has not disputed, at trial or in this appeal, the sufficiency of the evidence to prove that she "created [a] reasonable fear or apprehension [of bodily harm] in the victim.” See Carter, 269 Va. at 47, 606 S.E.2d at 841. Appellant argued at trial only that her words alone did not meet the overt act requirement and that she engaged in no intentional behavior sufficient to constitute such an act or prove an intent to inflict an assault or battery.
At oral argument on appeal, when asked whether Coleman was "in reasonable fear” of appellant, appellant’s counsel responded, "I think the evidence was ... that she was [in fear] or she wouldn’t have closed the door [of the bus].” Although counsel vigorously disputed whether appellant engaged in the requisite overt act causing Coleman's fear, counsel also conceded that "[appellant's] words alone certainly were said with the intent [to cause such fear], I can't dispute that.”
*135 In any event, the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to prove that appellant’s behavior, viewed in its totality as discussed in the text, constituted an overt act which was committed with the requisite intent and put Coleman in reasonable fear or apprehension of bodily harm. Fear, like intent, is a state of mind which may be proved with circumstantial evidence such as the person's conduct and statements. See Campbell, 12 Va.App. at 484, 405 S.E.2d at 4. When appellant first confronted Coleman from a position about two feet away from Coleman's open bus door and began her verbal tirade, Coleman did not just ignore appellant. Instead, she shut the door of her bus, called the office, and told them she needed not only a supervisor but a police officer, as well. Coleman reported that appellant was "harassing her saying that she's going to pull her off the bus and beat her up." At the time of the confrontation, Coleman's bus was blocked by appellant’s car, and appellant herself blocked the bus' door. Coleman remained inside the bus until the principal arrived. During the afternoon incident, Coleman had been preparing to disembark from her unoccupied bus, but when appellant again appeared outside the door and renewed her verbal threats, which the trial court found constituted a present threat rather than a future one, appellant closed the door instead of exiting as she had planned, and appellant remained standing outside the bus. These events provided sufficient circumstantial evidence that appellant’s acts, in combination as discussed in the text, placed Coleman in fear of bodily harm and that such fear was reasonable under the circumstances.