COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Raphael and Lorish
Argued by videoconference

CHAD RICHARD UMBACH

v.       Record No. 1418-21-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE STUART A. RAPHAEL
OCTOBER 25, 2022

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Kathleen M. Uston, Judge

Bret D. Lee for appellant.

Lindsay M. Brooker, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Appellant Chad Umbach challenges the sufficiency of the evidence supporting the circuit

court's conclusion that Umbach committed misdemeanor simple assault, in violation of Code

§ 18.2-57. Because the evidence sufficed for a rational trier of fact to find Umbach guilty

beyond a reasonable doubt, we affirm his conviction.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v.

Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381

(2016)). In doing so, we discard any of appellant's conflicting evidence and regard as true all

credible evidence favorable to the Commonwealth and all inferences that may reasonably be

drawn from that evidence. *Id.* at 473.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On the evening of August 15, 2020, Bryanna Webb, Crystal Everett, and Jonathan Figaro were dining on the patio of the 219 Restaurant in Alexandria. Webb and her friends were sitting behind a low fence; Umbach was standing with his friends and his dog on a sidewalk on the opposite side of the fence. When Umbach's dog jumped onto Webb's lap uninvited, Webb asked Umbach to remove the animal, and Umbach obliged. But the dog later returned to Webb's table. When Webb again asked Umbach to retrieve his dog, Umbach responded angrily, "what's your problem, the dog's not bothering you, it's just a puppy, get over it, no one cares."

Umbach's anger intensified. He told Webb and her friends to "go back to Maryland," uttered "the N Word," and called them "Antifa bitches." The racial slur brought Webb and her friends to their feet. Umbach was "very close" to Webb as he yelled at her, about "five inches" away. He was "very angry and red in the face." Although Umbach's friend, Richard Sharp, stepped in the middle to separate them, Umbach swung at Webb with his right hand. Umbach would have struck Webb if she had not moved aside. Everett and Figaro corroborated Webb's testimony, saying that Umbach was "swinging his arm like he was trying to hit [Webb]" and that Umbach "tried to pull a punch" at Webb. Umbach's friends "carried him down the street." As he was led away, Umbach threatened to kill Webb and her friends, kicking trash cans and a car as he went along.

After Webb, Everett, and Figaro testified in the Commonwealth's case-in-chief, the circuit court denied Umbach's motion to strike. In the defense case, Sharp testified that he "saw the anger flash in [Umbach's] eyes." Sharp prevented Umbach from moving closer to Webb because he "was already worried there might be an incident about to happen." Sharp said he was "chest to chest" with Umbach and needed "a fair amount of force" to restrain Umbach. Although Umbach tried to push Sharp out of the way, Sharp did not see Umbach come "face to

face" with Webb, did not hear him threaten to kill anyone, and did not see him try to punch anyone. Umbach's girlfriend also testified that she did not see Umbach try to hit Webb.

The circuit court convicted Umbach of misdemeanor simple assault. The court noted that Umbach became verbally abusive when Webb asked him to remove his dog a second time. The court cited Sharp's testimony that anger flashed in Umbach's eyes and that Sharp required "quite a bit of effort" to restrain Umbach. The court found that, had Webb "not ducked to get out of the way, she would have been struck by the swing." Umbach's counsel did not object to the court's characterization that Webb had "ducked" Umbach's "swing." The court sentenced Umbach to a total of forty-five days' imprisonment, with forty-five days suspended.

ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Yoder v. Commonwealth*, 298 Va. 180, 181-82 (2019) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Pijor*, 294 Va. at 512). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

Code § 18.2-57(A) provides that "[a]ny person who commits a simple assault or assault and battery is guilty of a Class 1 misdemeanor." "Virginia, like many jurisdictions, 'has merged the common law crime and tort of assault . . . .'" *Blankenship v. Commonwealth*, 71 Va. App. 608, 620 (2020) (quoting *Clark v. Commonwealth*, 54 Va. App. 120, 128 (2009)). As a result, "there are three separate ways the Commonwealth can establish the crime of assault and battery under Code § 18.2-57: (1) by proving a battery; (2) by proving common law criminal assault; or (3) by proving common law tortious assault." *Id.*

The evidence here sufficed to prove a common law criminal assault. That form of assault consists of "an overt act intended to inflict bodily harm with the present ability to inflict such harm." *Id.* "[T]he bodily harm threatened need not be serious or deadly harm." *Id.* at 620-21 (quoting *Clark*, 54 Va. App. at 129). The overt act here was Umbach's trying to strike Webb. Webb testified that it was "definitely a swing." Everett confirmed that Umbach "was swinging" at Webb "like he was trying to hit her." Figaro said that Umbach "tried to pull a punch at [Webb]." The evidence also supported that Umbach had "the present ability to inflict" harm on Webb. *Id.* at 620. They stood only inches apart, separated by Sharp, and Webb testified that Umbach would have struck her had she not moved out of the way.[1]

We are not persuaded by Umbach's argument that the Commonwealth failed to prove that he intended to strike Webb, rather than someone else—what Umbach characterizes as a reasonable hypothesis of innocence. Webb, Everett, and Figaro each testified that Umbach's swing was directed at Webb. Webb's testimony that she had to move aside to avoid being struck

---

[1] Our conclusion that the evidence supported a finding of common law criminal assault makes it unnecessary to consider Umbach's claim that the Commonwealth failed to prove that he put Webb in reasonable fear or apprehension of bodily harm, an element of common law tortious assault under *Blankenship*, 71 Va. App. at 620. *See Commonwealth v. White*, 293 Va. 411, 419 (2017) ("As we have often said, '[t]he doctrine of judicial restraint dictates that we decide cases "on the best and narrowest grounds available."'" (alteration in original) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))).

shows that Umbach tried to hit her and would have succeeded had she not evaded him. Thus, the circuit court could reasonably conclude that Umbach swung his arm towards Webb, intending to harm her.[2]

The circuit court's finding is reinforced by Umbach's words and conduct, both before and after he swung at Webb. While "words *alone* are never sufficient to constitute an assault under either the traditional criminal definition of assault or the assimilated tort definition," *Blankenship*, 71 Va. App. at 621, prior conduct and words "are highly relevant in shedding light on intent and the context within which certain actions transpired," *Clark v. Commonwealth*, 279 Va. 636, 642 (2010). Umbach was "visibly angry, turning red face[d], flashing anger in his eyes." Even Sharp, Umbach's friend, worried that "an incident [was] about to happen." Umbach also threatened to "kill" Webb and her friends as Sharp pulled him away. That evidence supports the circuit court's conclusion that Umbach tried to strike Webb in anger.

CONCLUSION

In short, the evidence sufficed for a rational trier of fact to conclude beyond a reasonable doubt that Umbach committed misdemeanor assault; he angrily swung at Webb, intending to hit her, and he would have succeeded if she had not evaded his swing.

*Affirmed.*

---

[2] We do not reach Umbach's argument that the circuit court mischaracterized the evidence when it said that if Webb had not "ducked" to get out of the way, she would have been struck by the *"swing"* taken by Umbach. At oral argument, Umbach could not point in the record to where he had contemporaneously objected to the circuit court's alleged mischaracterization. *See* Rule 5A:18. A party who thinks that the trial court has misunderstood or misstated a fact and who is able to correct it must bring the issue to the court's attention "to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015); *see* Rule 5A:18.