COURT OF APPEALS OF VIRGINIA

**UNPUBLISHED**

Present:  Judges Fulton, Ortiz and Lorish
Argued at Norfolk, Virginia


JACQUELINE LYNN ORTIZ, S/K/A
 JACQUELINE LYNN ORTIZ-WHITAKER

MEMORANDUM OPINION* BY
v.      Record No. 1918-23-1       JUDGE JUNIUS P. FULTON, III
                                    JUNE 24, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Afshin Farashahi, Judge

Meghan Shapiro (Virginia Indigent Defense Commission, on briefs),
for appellant.

Andrew T. Hull, Assistant Attorney General (Jason S. Miyares,
Attorney General; Michael O. Jenkins, Jr., Assistant Attorney
General, on brief), for appellee.


Jacqueline Lynn Ortiz[1] was a passenger in a stolen vehicle when Officer Jeremy Hall

unsuccessfully attempted to detain her husband, the driver, Deshawn Whitaker. Ortiz also

attempted to flee but was quickly apprehended by Officer Hall. However, a brief scuffle ensued as

Ortiz not only continued in her attempt to flee but also repeatedly reached for a gun in her

waistband. During the scuffle, Deshawn returned, retrieved a firearm, and pointed it at Officer Hall,

at which point Officer Hall shot and killed Deshawn. Officer Hall was then able to restrain and

arrest Ortiz.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Ortiz also goes by Jacqueline Lynn Ortiz-Whitaker. For the purposes of this opinion,
we will refer to her as "Ortiz."

Ortiz pled guilty to possession of a firearm after having been found guilty of a family abuse offense and carrying a concealed weapon. After a bench trial, Ortiz was found guilty of four additional charges: brandishing a firearm, attempting to flee from a law enforcement officer, felony receiving stolen property, and felony assault of a law enforcement officer. Ortiz appeals the felony assault of a police officer and felony receiving stolen property to this Court, arguing that the evidence was insufficient to find (1) that she had the requisite intent to assault the officer and (2) that she had possession of the stolen property. We find the evidence sufficient to establish Ortiz had the requisite intent to assault Officer Hall but insufficient to establish that Ortiz exercised joint dominion and control over the stolen car at the time she had knowledge of its status as a stolen vehicle. Thus, we affirm in part and reverse in part.

## BACKGROUND[2]

On December 1, 2022, Ortiz was riding in the passenger seat of a stolen car driven by her husband, Deshawn, as it entered the parking lot of a Virginia Beach shopping center. Also in the car was Deshawn's unidentified male friend. Officer Hall, who was sitting in his patrol car in the shopping center parking lot, noticed the car when the patrol car's license plate reader indicated that it was stolen. Officer Hall followed the stolen car and parked behind it as the unidentified male passenger got out and walked to a store. Officer Hall left his patrol car and approached as Deshawn got out of the driver's seat and began to restrain him. Deshawn quickly took off running, and after a brief pursuit, Officer Hall returned to the stolen car, where Ortiz had gotten out of the passenger seat. When she saw Officer Hall approaching, she turned and started to run away. Officer Hall quickly apprehended her and forced her onto the roadway.

---

[2] "Under the applicable standard of review, we view the evidence in the light most favorable to the Commonwealth as the party who prevailed below." *Bennett v. Commonwealth*, 69 Va. App. 475, 479 n.1 (2018) (citing *Riner v. Commonwealth*, 268 Va. 296, 303, 327 (2004)).

Officer Hall's body cam footage reveals a frantic scene. A gun is plainly visible, tucked into Ortiz's waistband, as she screamed for "help" and "babe" with a mix of other unintelligible screams. Officer Hall repeatedly ordered her to remain still as he tried to detain her. While attempting to handcuff her, he first noticed the firearm when her "shirt came up" and she reached for it. When Ortiz "grabbed the firearm with her right hand," Officer Hall grabbed her hand and forced her to release the firearm and warned her that "if she grabbed the gun or reached for the gun, [he] was going to shoot her." Ortiz continued to resist Officer Hall and struggled to reach for her weapon. At one point Officer Hall unholstered his gun but had to re-holster it to try and prevent Ortiz from reaching her gun. Despite the warnings, Ortiz repeatedly reached for the gun and eventually was able to briefly grab it. During the scuffle, Officer Hall even requested help from a bystander to restrain Ortiz, who came forward to help but withdrew for fear of getting shot.

During this scuffle, Deshawn returned to the scene and pulled a gun out of a bag that he had discarded while fleeing. Deshawn pointed the weapon directly at Officer Hall. At this point, Officer Hall released Ortiz, turned towards Deshawn with his own weapon, and fired four times, killing Deshawn. Ortiz remained on the ground, and after Officer Hall shot Deshawn, she began to crawl towards Deshawn. Officer Hall then restrained her again. The gun from her waistband is visible a few feet away in the middle of the road.

Ortiz was charged with two counts of brandishing a firearm, possessing a concealed firearm, possessing a firearm after conviction for domestic assault, felony receiving stolen property, resisting arrest, and assault on an officer. She pled guilty, without agreement, to both counts of possessing a firearm. She pled not guilty to the remaining charges.

When interviewed by the police,[3] Ortiz said that she tried to run away because she knew the car was stolen. She also claimed that she had a gun for her own protection after she testified as an eyewitness to a murder. When asked why she kept reaching for her weapon, she said she could feel the weapon pushing into her back when Officer Hall tackled her and knew it was loaded with a bullet in the chamber. She told the officers that she was worried that in the struggle the gun might accidentally discharge and she would be shot. She testified that she only wanted to get the gun away from her and had no intention of shooting Officer Hall. Officer Hall testified at trial that he believed she had been reaching for the gun because she wanted to shoot him.

In her police interview, Ortiz also said that she had only discovered that the car was stolen three days prior to December 1, 2022. She maintained that although the car had been in Deshawn's possession for over a week, she had never driven the car. She said that she and her husband had spent Thanksgiving at her aunt's home a week prior to the encounter with Officer Hall and had used the car to get there. Ortiz said that the morning of the encounter, she accompanied Deshawn as he drove their girlfriend[4] to work and that they were giving Deshawn's unidentified male friend a ride to the shopping center when the encounter with Officer Hall occurred.

After a bench trial, Ortiz was found guilty of one count of brandishing, possessing a concealed firearm, possessing a firearm after a conviction for domestic assault, receiving stolen property, resisting arrest, and assault on an officer. Ortiz challenges her convictions for receiving stolen property and assault on a police officer, arguing that (1) "[t]he trial court erred

[3] Ortiz chose not to testify at trial.

[4] From her interview with the police, the girlfriend appeared to be in a relationship with both Ortiz and Deshawn.

- 4 -

in denying a motion to strike, as well as in finding Ms. Ortiz-Whitaker guilty, as to possession of stolen property (specifically regarding the element of possession)," and (2) "[t]he trial court erred in denying a motion to strike, as well as in finding Ms. Ortiz-Whitaker guilty, as to assault of an officer (specifically regarding the element of intent)."

ANALYSIS

When reviewing assignments of error challenging the sufficiency of the evidence, "the relevant question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We review the sufficiency of evidence supporting a conviction in the light most favorable to the Commonwealth." *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (internal citations omitted).

## I. Specific Intent

"Virginia, like many jurisdictions, 'has merged the common law crime and tort of assault so that today, a common law assault [punishable as a criminal offense] occurs when either set of elements is proved.'" *Clark v. Commonwealth*, 54 Va. App. 120, 128 (2009) (en banc) (alteration in original) (quoting *Carter v. Commonwealth*, 269 Va. 44, 46 (2005)).

> An assault occurs under the traditional criminal definition when an assailant engages in an overt act intended to inflict bodily harm and has the present ability to inflict such harm. An assault occurs under the merged tort law definition when an assailant engages in an overt act intended to place the victim in fear or apprehension of bodily harm and creates such reasonable fear or apprehension in the victim.

*Id.* (internal citations omitted). While overt acts are required to satisfy both the criminal and tort definitions of assault, the intent required under each definition is different.

> Under the criminal definition of assault, the overt act must have been committed with the *actual "inten[t] to inflict bodily harm" and* the perpetrator must have a *present ability* to inflict such harm; under the tort law definition, by contrast, the overt act may be committed merely with the "inten[t] to place the victim in fear or

> apprehension of bodily harm" where the act "creates such reasonable fear or apprehension in the victim."

*Id.* at 129 (alterations in original) (internal citations omitted).

Additionally, the type of overt act required to prove assault under the criminal definition may be different than the type of overt act required to prove assault under the tortious definition. *Id.* at 129-30. Although our case law does not typically indicate under which definition of assault a defendant is convicted, some examples of overt acts are instructive. In *Bowie v. Murphy*, 271 Va. 126 (2006), the defendant was convicted of assault when she swung a camera at the victim. In *Carter v. Commonwealth*, the defendant was convicted of assault when he swung his arm towards the officer, holding his fingers in a shape to mimic a gun. 269 Va. 44. Finally, in *Clark v. Commonwealth*, the defendant was convicted of assault when she blocked a bus with her car and verbally threatened the victim, who was on the bus, multiple times. 54 Va. App. 120. In that case, the court did indicate that this behavior satisfied the overt act element of the tortious assault definition. *Id.* at 134.

Here, after Officer Hall tackled and apprehended Ortiz, she began to reach around her back towards a gun in her waistband. Officer Hall repeatedly ordered Ortiz to not reach for or touch the gun. Ortiz did not comply and continued to repeatedly reach for the gun, eventually grabbing hold of it. The trial court found that Ortiz's actions were sufficient to support a conviction for assault, and we do not disturb that finding on appeal.

The trial court heard evidence that Ortiz was a passenger in a stolen vehicle and attempted to flee from Officer Hall. During the subsequent struggle with Officer Hall, Ortiz repeatedly reached for her weapon despite Officer Hall's repeated and clear orders to stop. Under the assimilated tort definition of assault, the trial court found that the evidence was sufficient to find that Ortiz engaged in an overt act intended to place Officer Hall in apprehension of bodily harm by repeatedly reaching for her weapon while resisting arrest.

Viewing the evidence in a light most favorable to the Commonwealth as the prevailing party below and giving due deference to the credibility determinations of the trial court, we certainly cannot say that the trial court erred in that conclusion. We affirm its decision as to Ortiz's conviction for assault of a police officer.

## II. Possession of Stolen Property

"To convict a defendant under Code § 18.2-108, the Commonwealth must prove that property 'was (1) previously stolen by another, and (2) received by defendant, (3) with knowledge of the theft, and (4) a dishonest intent.'" *Shaver v. Commonwealth*, 30 Va. App. 789, 800 (1999) (quoting *Bynum v. Commonwealth*, 23 Va. App. 412, 419 (1996)). To prove that Ortiz "received" the stolen property, the Commonwealth was required to prove that she possessed it, either actually or constructively. *See Whitehead v. Commonwealth*, 278 Va. 105, 113 (2009). Merely "benefitting" from stolen property is not sufficient to show that a defendant "received" the stolen property. *Id.* "To establish constructive possession, the Commonwealth is required to 'present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the [property] and that the [property] was subject to [her] dominion and control.'" *Id.* In other words, the Commonwealth needed to prove that Ortiz knew that the car was stolen and, while knowing the car was stolen, that she exercised control or dominion over the car. The trial court found sufficient evidence to find that Ortiz jointly possessed the stolen vehicle with her husband. We disagree and reverse the trial court.

To find joint possession of stolen property, the accused must consciously exercise dominion or control over the stolen property. For instance, in *Williams v. Commonwealth*, 56 Va. App. 638, 645 (2010), the defendant was found to be "more than a mere passenger in a known stolen vehicle," because he directed the driver of the stolen vehicle to pick up and drop

off friends of the defendant while knowing that the car had been stolen. Given that the driver of the stolen vehicle had no relationship with the defendant's friends, the trial court was able to infer that the defendant had directed the driver to stop and accommodate his requests. *Id.* Therefore, the defendant was found to have exercised control over the vehicle, despite having never driven it. *Id.*

The evidence as established by the Commonwealth in the case at hand suggested that Ortiz exercised control over the stolen vehicle when the car was used to visit her aunt for Thanksgiving, but the Commonwealth failed to establish that Ortiz knew the car was stolen at that time. Instead, the evidence showed that Ortiz did not discover that the car was stolen until days after the Thanksgiving trip. Therefore, while she may have exercised control over the stolen vehicle by directing its use during the Thanksgiving trip, the evidence failed to establish that she did so with the knowledge that the car was stolen.

The Commonwealth likewise failed to establish that Ortiz exercised dominion or control *after* she discovered that the car was stolen. Ortiz never drove the car, nor did the Commonwealth establish that she had exercised any control over where the car was driven after being told that it was stolen. There was no evidence that Ortiz had told her husband where to drive or who to carry in the vehicle. The Commonwealth seems to rely only on her status as the wife of the driver of the stolen vehicle and that she knew the few passengers who were driven in the car by her husband. Access to the stolen car, without the exercise of dominion or control of the car, is not enough to prove Ortiz had possession of stolen property. *See Whitehead*, 278 Va. at 113. Additionally, while Ortiz also may have had a relationship with Deshawn's girlfriend and the unidentified male, the Commonwealth failed to establish that Ortiz exercised control over the use of this stolen vehicle in transporting these friends. Therefore, because the evidence

was insufficient to find that Ortiz had conscious control over a known stolen vehicle, we reverse the trial court's holding finding Ortiz guilty of possession of stolen property.

## CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part the holding of the trial court.

*Affirmed in part, and reversed in part.*