COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Ortiz and Callins

CURTIS RAY JONES

                                           MEMORANDUM OPINION[*] BY

v.       Record No. 2134-24-2         CHIEF JUDGE MARLA GRAFF DECKER
                                               MARCH 31, 2026

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF HENRICO COUNTY
L.A. Harris, Jr., Judge

(Kevin Purnell; Kevin D. Purnell, PLLC, on brief), for appellant.

(Jason S. Miyares,[1] Attorney General; Rosemary V. Bourne, Senior
Assistant Attorney General, on brief), for appellee.

Curtis Ray Jones appeals his convictions for abduction, unlawful wounding, and assault

and battery of a family or household member in violation of Code §§ 18.2-47, -51, and -57.2. He

challenges the sufficiency of the evidence to prove abduction on two grounds, claiming that any

detention or asportation was merely incidental to the assault and battery and the victim's

testimony was "inherently incredulous." He also suggests that the evidence failed to support his

convictions for all of the offenses because it established that they occurred on "a different date"

than the one charged. We hold the trial court did not err and affirm the convictions.[2]

_____

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Having examined the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the facts and legal arguments are adequately presented in
the briefs and record, and the decisional process would not be significantly aided by oral
argument." *See* Code § 17.1-403(ii)(c)**;** Rule 5A:27(c).

BACKGROUND[3]

In the spring of 2023, Jones and his girlfriend, Chantell Jones (Chantell), shared an apartment in Henrico County. On the day in question, the couple argued in an upstairs bedroom. While Chantell was lying on the bed, Jones jumped on her, sat on her chest, pinned her arms, and struck her with his hands. She squirmed and swatted at him to get him off her. Jones called her a "stupid bitch[]" who "never learn[ed]." He then grabbed Chantell's hair and dragged her off the bed and across the room to the doorway before releasing her and walking downstairs.

After seeing clumps of her hair fall out, Chantell followed Jones downstairs. She told him that he had "pulled [her] hair out." Jones replied that he should "do more than that" and she "need[ed] to be dead." Chantell went into the downstairs bathroom to look in the mirror. When she saw her missing hair, she resumed arguing with Jones, sarcastically asking if he wanted to cut off the rest of her hair. She demanded that he leave the apartment. He refused, telling her to "make [him] leave." He then clapped his hands in her face, "making his hands[,] as they close[d], hit [her] on [her] lips."

As the argument continued, Chantell walked into the living room and again demanded that Jones leave. He raised his arm to punch her, causing her to "dodge back" and fall onto the sofa. He climbed on top of her, put one knee on her chest, pushed her to the floor, and dug his other knee into her eye.

After Jones climbed off Chantell, she returned to the downstairs bathroom and again told him to leave. He followed her and pushed her into the towel rack, causing her head to hit the

---

[3] "On appeal, [this Court views] the facts 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Camann v. Commonwealth*, 79 Va. App. 427, 431 (2024) (en banc) (quoting *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)). That principle requires the Court to "'discard' the defendant's evidence when it conflicts with the Commonwealth's evidence, 'regard as true all the credible evidence favorable to the Commonwealth,' and read 'all fair inferences' in the Commonwealth's favor." *Thomas v. Commonwealth*, 82 Va. App. 80, 93 (2024) (en banc) (quoting *Camann*, 79 Va. App. at 431).

wall. When she pushed him back, he "lean[ed] in" and bit her lips. As she tried to push him off, he grabbed a pair of scissors from the counter, held them against her chest, and said that he should "kill [her] ass[] right [then]" because she "never fucking learn[ed]." He then moved the scissors from her chest to her neck, and she was afraid she would die.

As Chantell continued to resist Jones, he put the scissors against her wrist, pushed her "hard" to the floor, and then left the bathroom. She grabbed the scissors, ran upstairs to call 911, and realized that blood was "pouring out of" a gash on her wrist where Jones had cut her. She locked herself in the bedroom.

Once the police arrived, Chantell was examined by a medic, and the officers arrested Jones. In addition to her missing hair, Chantell sustained multiple injuries, including a cut on her wrist that required stitches and left a scar, a cut on her neck, and a rug burn on her elbow from being dragged on the carpet. Chantell went to the hospital later that day, where medical personnel stitched her wound and she was examined by a forensic nurse.

Jones was charged with abduction, unlawful wounding, and assault and battery of a family or household member, all of which were alleged to have occurred on March 29, 2023. Chantell and Henrico County Police Officer Justin Hambley were the Commonwealth's witnesses at trial. During Chantell's direct examination, the prosecutor asked her where and with whom she lived on May 29, 2023, not March 29 of that year as charged in the indictments. In response, Chantell gave her address, stated that she and Jones lived there together, and explained that he was her boyfriend. The prosecutor then asked Chantell to "tell the jury what happened on May 29." Chantell testified about the abuse.

Defense counsel cross-examined Chantell at length, including about her statements to the officers at the scene, her statements to the forensic nurse, and her written account of the incident. In response to a question about her written statement, Chantell said she did not remember exactly

- 3 -

what time of day the relevant events occurred because it had "been over a year" since "March 29 of 2023" (the date on which the indictments alleged the crimes occurred).

When the prosecutor called Officer Hambley to testify, she again misstated the date of the offenses. The prosecutor asked him if he responded to a call for service from Chantell's residence on May 29, 2023 (rather than March 29). Hambley answered that he did.

Jones did not present evidence. During his motion to strike the Commonwealth's evidence, defense counsel emphasized that Chantell and Officer Hambley testified about the relevant events in response to questions about May 29, 2023, rather than March 29, 2023, the date listed in the indictments. Jones argued that the Commonwealth therefore failed to prove that he committed the charged offenses on March 29, 2023. After the trial court mentioned its own recollection of the testimony about dates, the prosecutor noted that, at one point, Chantell testified "that this happened in March" 2023. She contended, as a result, that it was up to the jury to resolve any conflict in the evidence about the date of the offenses. The trial court denied the motion to strike, agreeing with the prosecutor that Chantell's statement during cross-examination that the events occurred on March 29, 2023, created a factual issue for the jury.

During closing argument, defense counsel noted the date discrepancy and argued to the jury that, as a result, the Commonwealth had not proved its case. The prosecutor responded by suggesting to the jury that she simply misspoke about the date of the offense. She noted both Chantell's testimony that the events happened on March 29, 2023, and the identical date on the seal of the evidence bag containing the scissors collected that day.

The jury convicted Jones of abduction, unlawful wounding, and assault and battery of a family or household member, in each case as "in the indictment" or "as charged in the indictment." At the sentencing hearing, Jones made a motion to set aside the verdicts. He argued the evidence was insufficient to establish an abduction beyond the detention inherent in

proving the assault and battery against a family or household member. Jones also contended that Chantell's testimony regarding the abduction was "partially inherently incredulous" because she did not report being dragged from bed by her hair on the day of the assault. Finally, he again argued that Chantell and Officer Hambley testified about events that happened on May 29, 2023, not March 29 of that year.

The trial court declined to set aside the verdicts. It determined that the evidence was sufficient to establish the elements of abduction beyond what was necessary to prove assault and battery of a family or household member. Further, it held that Chantell's testimony was not inherently incredible. And as to the date of the offenses, the court observed that the jury heard evidence about both the March and May dates. It reasoned that the jury was entitled to find that the relevant acts occurred on March 29, as charged in the indictments. Jones was sentenced to ten years and twelve months of incarceration with five years suspended.

ANALYSIS

Jones challenges his convictions on three grounds. He contests the sufficiency of the evidence to prove an abduction. Further, Jones suggests the testimony of the victim was inherently incredible. Finally, he argues that the evidence established the crimes occurred on a different date than the one charged in the indictments. We consider these arguments in turn.

I. Abduction

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Sample v. Commonwealth*, 303 Va. 2, 16 (2024) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original)). In such cases, the "appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Cappe v. Commonwealth*, 304 Va. 86, 87 (2025) (per curiam) (emphasis added) (quoting *Williams*

*v. Commonwealth*, 278 Va. 190, 193 (2009)). Rather, the "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis added) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact . . . .'" *Bennett v. Commonwealth*, 84 Va. App. 607, 619 (2025) (alteration in original) (quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020)).

Jones challenges the sufficiency of the evidence to prove abduction independent of his conviction for assault and battery of a family or household member. To address the challenge regarding the abduction, therefore, we begin by reviewing the law relating to assault and battery.

The crime of assault and battery can be established by proving either one, a battery or an assault. *See Blankenship v. Commonwealth*, 71 Va. App. 608, 619-20 (2020) (analyzing "simple assault . . . and battery" as proscribed by Code § 18.2-57(A)). This is so because of the legal relationship between the two common-law offenses. A battery is a "'wil[l]ful or unlawful touching' of another." *Kelley v. Commonwealth*, 69 Va. App. 617, 625 (2019) (quoting *Parish v. Commonwealth*, 56 Va. App. 324, 330 (2010) (alteration in original)). And an "attempted battery" is one type of assault. *See Clark v. Commonwealth*, 54 Va. App. 120, 129-30 (2009) (en banc) (quoting 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 16.3, at 569 (2d ed. 2003)), *aff'd*, 279 Va. 636 (2010). The Commonwealth proves this form of assault with evidence that "the defendant engaged in an overt act intended to inflict bodily harm [while he had] the present ability to inflict such harm." *Blankenship*, 71 Va. App. at 620 (quoting *Clark*, 54 Va. App. at 128). Alternatively, the Commonwealth can prove an assault under the tort-law definition of the crime—with evidence that the defendant intentionally and successfully frightened

another into believing the defendant intended to commit a battery against him, without regard for whether the defendant had the ability to do so at that time. *Clark*, 54 Va. App. at 128 (citing *Carter v. Commonwealth*, 269 Va. 44, 47 (2005)). A jury may convict a defendant of assault and battery of a family or household member if it finds that the defendant committed any of these acts against such a person. *See Blankenship*, 71 Va. App. at 620.

Turning to the offense of abduction, Virginia's abduction statute "effectively combines the common law offenses of kidnapping, abduction, and false imprisonment 'into one statutory felony.'" *Clanton v. Commonwealth*, 53 Va. App. 561, 567 (2009) (en banc) (quoting *Walker v. Commonwealth*, 47 Va. App. 114, 120 (2005)). A defendant is guilty of abduction if, "by force, intimidation[,] or deception, and without legal justification or excuse, [he] seizes, takes, transports, detains[,] or secretes another person with the intent to deprive such other person of his [or her] personal liberty." *Brown v. Commonwealth*, 74 Va. App. 721, 730 (2022) (quoting Code § 18.2-47(A)). "Put simply, the *actus reus* of the crime is a taking, transporting, or detention of another, while the *mens rea* of the crime is a specific intent to deprive another of [his or] her liberty." *Id.* at 730-31.

"To avoid implicating the Double Jeopardy Clause, the Virginia Supreme Court has . . . held that the statutory definition of 'abduction' does not encompass 'the kind of restraint [that] is an intrinsic element of crimes such as rape, robbery, and assault [and battery] . . . .'" *Wiggins v. Commonwealth*, 47 Va. App. 173, 180 (2005) (final alteration in original) (quoting *Brown v. Commonwealth*, 230 Va. 310, 314 (1985)). Rather, for abduction to constitute a separate offense, any detention must be "separate and apart from, . . . not merely incidental to, the restraint employed in the commission of the other crime." *Brown*, 230 Va. at 314. "[W]hether the detention established by the evidence is 'the kind of restraint [that] is an intrinsic element of [another] crime[] . . .' is a question of law to be determined by the court." *Swezey v. Commonwealth*, 77 Va. App.

809, 815 (2023) (first alteration in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 229 (2013)).

In *Lawlor*, 285 Va. at 225, the Supreme Court held that "[t]he only issue when abduction is charged alongside an offense for which detention is an intrinsic element is whether any detention exceeded the minimum necessary to complete the required elements of the other offense."  In light of this "mandatory" test set out in *Lawlor*, this Court has held that the factors previously set out in *Hoyt v. Commonwealth*, 44 Va. App. 489, 494 (2004), for determining whether a detention was incidental to another offense are merely "permissive."[4]  *Swezey*, 77 Va. App. at 817.

The dispositive issue here is "whether any detention exceeded the minimum necessary to complete the required elements of [an assault and battery]."  *Id.* (quoting *Lawlor*, 285 Va. at 225).  Chantell testified that during an argument in their bedroom, Jones pinned her to the bed and hit her.  Afterward, he grabbed her hair, pulled her off the bed, and dragged her across the room to the doorway.  "The abduction statute does not contain a temporal requirement," so "a victim can be detained" or transported "even if only for the briefest of moments."  *Brown*, 74 Va. App. at 731-33.  Based on the instant facts, we conclude that Chantell's testimony that Jones dragged her across the room was sufficient to support the conviction for abduction.  Although the Commonwealth could have chosen to prosecute the dragging as an assault and battery, the act of dragging exceeded merely pulling her hair, thereby supporting Jones's conviction for the greater offense of abduction.  *Compare* Code § 18.2-47, *with* Code § 18.2-57.2.

And Jones's additional acts against Chantell were more than sufficient to support his independent single assault-and-battery conviction.  Assuming without deciding that his restraining

---

[4] The *Hoyt* factors, erroneously relied upon by Jones as controlling, include (a) "the duration of the detention or asportation"; (b) whether it "occurred during the commission of a separate offense"; (c) whether it was "inherent in the separate offense"; and (d) whether it created a "significant" and "independent" "danger to the victim."  *See Swezey*, 77 Va. App. at 815 (quoting *Hoyt*, 44 Va. App. at 494).

- 8 -

and hitting her on the bed were too closely related to the dragging incident to prove a separate crime, Jones committed numerous additional acts of assault and battery that were spatially and temporally removed from the bedroom dragging incident.[5] After he let go of the victim's hair, he went downstairs, and she followed. They resumed fighting when he hit her lips, pushed her to the floor, and put one knee on her chest while forcing the other one into her eye. Then, in the downstairs bathroom, Jones again hit Chantell and pushed her to the ground. He also bit her lips. The jury was entitled to find that either of these additional downstairs attacks was a battery. Likewise, in the downstairs bathroom, Jones held scissors against Chantell's chest and neck and stated that he should "kill [her] ass." At that point, Chantell believed she would die. This evidence supports a finding that Jones intended to, and did, put Chantell in fear, thereby proving an assault and battery.

In short, the jury had an array of acts for which it could have convicted Jones of assaulting and battering Chantell. Jones committed those acts during the same general altercation in which he grabbed her hair and used it to drag her across her bedroom. But the other acts were distinct in both time and space from the dragging, with several of them happening only after the dragging was complete, on a different floor of the house after the attack had momentarily ceased. The detention involved in the abduction therefore was not merely incidental to that involved in the crime of assault and battery of a family or household member for which Jones was also convicted. Accordingly, the dragging was a separate act that independently proved the required elements of abduction. *See Swezey*, 77 Va. App. at 817.

---

[5] In light of this holding, the Court need not consider whether any other act committed by Jones during the incidents described by Chantell might have supported an additional separate conviction for abduction. *See Shaw v. Commonwealth*, 304 Va. 217, 233 (2025) (observing that judicial restraint requires appellate courts to resolve cases on the best and narrowest ground available).

The evidence supports a finding that Jones committed at least one detention or transportation that was separate and apart from several assaults and batteries he committed against Chantell, and he was convicted of only one count of each offense, thereby avoiding any double jeopardy violation.

## II. Inherent Incredibility

Jones argues that Chantell was an inherently incredible witness. "[D]etermining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact," in this case the jury, "wh[ich] has the ability to hear and see them as they testify." *Maldonado v. Commonwealth*, 70 Va. App. 554, 562 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). This Court, consistent with its limited role on appeal, "must accept 'the [factfinder]'s determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible.""" *Hammer v. Commonwealth*, 74 Va. App. 225, 239 (2022) (quoting *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019)).

The inherent-incredibility standard presents an extremely high hurdle on appeal. "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable [people] ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable [people] should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). "A legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness'[s] testimony or statements. Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Kelley*, 69 Va. App. at 626.

The record does not support Jones's assertion that Chantell's testimony was inherently incredible. He contends that Chantell's allegedly inconsistent statements to the 911 operator, police officers, and the forensic examiner, as well as her disdain for him, rendered her testimony unworthy

of belief. But this was an argument for the jury to consider when weighing her testimony. That Jones sought to impeach Chantell's credibility with inconsistent statements simply "does not necessarily render [her] testimony unworthy of belief" as a matter of law. *Juniper*, 271 Va. at 415. Rather, "[t]h[ese] circumstance[s were] appropriately weighed as part of the entire issue of witness credibility, which is left to the jury to determine." *Id.*; *see Ray v. Commonwealth*, 74 Va. App. 291, 306 (2022) ("[T]he mere fact that a witness'[s] testimony may have been impeached does not . . . render [it] inherently incredible."). In sum, we hold Chantell's testimony was not inherently incredible as a matter of law, so this Court may not disturb the jury's credibility determination.

### III. Date of the Offenses

The indictments alleged that Jones committed the charged felonies on or about March 29, 2023. As Jones correctly argues, because of the date the prosecutor used in framing a few of her questions, the Commonwealth adduced some evidence suggesting that the relevant events occurred two months later, on May 29, 2023. Jones maintains as a result that the evidence was insufficient to support his convictions. Assuming without deciding that the record did not permit the jury to resolve the conflict in the evidence regarding when the crimes took place in the Commonwealth's favor, that inconsistency does not warrant reversing the jury's verdicts.[6]

The purpose of an indictment is to provide the defendant with "notice of the nature and character of the accusations against him" so that he can adequately defend himself. *Purvy v.*

---

[6] As the trial court aptly noted, Chantell herself later corrected the erroneous date, volunteering while testifying on cross-examination that the attack occurred on March 29, 2023, the date alleged in the indictments. And the scissors collected by law enforcement at the scene and admitted as an exhibit at trial bore an evidence seal initialed and dated by a law enforcement officer that same day, "3/29/2023." But appellate courts must resolve cases on the best and narrowest grounds. *Shaw*, 304 Va. at 233. And the Court may utilize an "assuming without deciding" approach to do so. *See McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)). Here, the best and narrowest ground is that any factual discrepancy in the date of the offenses was not legally fatal to the Commonwealth's case. *See Shaw*, 304 Va. at 233-34 (applying harmless error analysis as the best and narrowest ground for deciding the case).

*Commonwealth*, 59 Va. App. 260, 265-66 (2011) (quoting *King v. Commonwealth*, 40 Va. App. 193, 198 (2003)). "A variance occurs when the criminal pleadings differ from the proof at trial." *Id.* at 266. But a variance is not fatal to the Commonwealth's case if it "does not undermine the integrity of the trial." *Id.* The appellate court "reject[s] mere matters of form where no injury could have resulted" to the defendant. *Id.* (quoting *Hairston v. Commonwealth*, 2 Va. App. 211, 214 (1986)).

The Supreme Court has held that, unless time is the essence of an offense, "the Commonwealth may prove" that the defendant committed it "on a date different from that alleged in the indictment." *Farhoumand v. Commonwealth*, 288 Va. 338, 351 (2014) (quoting *Harris v. Commonwealth*, 185 Va. 26, 33 (1946)); *see* Code § 19.2-226(6) (providing that "[n]o indictment or other accusation shall be quashed or deemed invalid" for "stating imperfectly[] the time at which the offense was committed when time is not the essence of the offense"). "When time is not an element of the crime charged, the jury verdict will stand if the evidence is sufficient to prove beyond a reasonable doubt that a crime occurred and that the defendant committed the crime . . . ." *Marlowe v. Commonwealth*, 2 Va. App. 619, 623 (1986).

Based on well-established law, we reject Jones's conclusory assertion that time was the essence of any of the offenses in this case. Time is not an element of abduction, unlawful wounding, or assault and battery of a family or household member. *See* Code §§ 18.2-47(A), -51, -57.2. Nor was time the essence of any of the offenses based on the facts supporting the convictions. *Contrast Farhoumand*, 288 Va. at 352-53 (recognizing that although time *may* be crucial if identity is contested and the defendant asserts an alibi, the question in familial abuse cases is "not who committed the [charged] crime[s] but whether the[y] . . . w[ere] committed" at all), *and Marlowe*, 2 Va. App. at 623-26 (recognizing that even the assertion of an alibi defense does not automatically mean that a variance between the dates charged and proved is fatal), *with*

*Cool v. Commonwealth*, 94 Va. 799, 801-03 (1896) (holding a variance was fatal where, due to statutory amendments, the date was crucial to determining whether the crime was a felony or a misdemeanor). Jones does not suggest he was unaware of the "nature and character of the accusations against him," nor does he assert specific allegations of prejudice arising from any inconsistency about the date of the offenses. *See Purvy*, 59 Va. App. at 265-66. Accordingly, any variance between the date in the indictments and the evidence at trial is not fatal to Jones's convictions.

CONCLUSION

The evidence was sufficient to prove that Jones detained the victim in a way that was not merely incidental to the commission of an assault and battery. Further, the testimony of the victim was not inherently incredible. As a result, the evidence supported Jones's conviction for abduction. Finally, time was not the essence of any of the offenses based on either their elements or the supporting evidence, so any variance between the indictment dates and the proof was not fatal to the Commonwealth's case. We therefore affirm Jones's convictions.

*Affirmed.*